**GRAY & CO. REALTORS, INC., Appellant**

**v.**

**ATLANTIC HOUSING FOUNDATION, INC., Appellee.**

No. 05–06–01037–CV.

Court of Appeals of Texas, Dallas.

June 13, 2007.

Rehearing Overruled Aug. 1, 2007.

Jeffrey W. Hellberg, Jr., Jeffrey W. Hellberg, Jr., P.C., Dallas, for appellant.

Joel Bruce Bishop, Michael W. Eaton, Eaton & Bishop, PLLC, Southlake, for appellee.

Before Justices WRIGHT, RICHTER, and SMITH.

## OPINION

Opinion by Justice BEA ANN SMITH.[1]

Appellant Gray & Co. Realtors, Inc. (Gray & Co.) appeals a take-nothing judgment entered by the trial court in its action against Atlantic Housing Foundation, Inc. (the Foundation) seeking its broker's commission under a buyer's representation agreement. We conclude that no broker's commission was owed to Gray & Co. and affirm the trial court's judgment.

### FACTUAL BACKGROUND

The facts in this case are largely undisputed and supported by the record. The Foundation is a non-profit corporation that owns and operates affordable-housing complexes for low-income and moderate-income residents. In late 2003, a lender approached the Foundation about purchasing fifteen affordable-housing complexes owned by subsidiary affiliates of Sendera Lone Star Apartments I, L.P. (Sendera). According to the testimony of Daniel French, its founder and president, the Foundation and other non-profit organizations were particularly interested in buying such housing complexes in late 2003 because the laws in place allowing certain ad valorem property-tax exemptions for affordable-housing properties held by non-profit organizations were going to change in January 2004.[2]

On December 30, 2003, the Foundation and Sendera entered into a "Contract of Sale" concerning the fifteen properties, which were collectively valued at approximately $196 million. As evidenced by the Contract of Sale and French's testimony, the intent was that the fifteen properties would be sold by Sendera to the Foundation by transferring 100 percent of Sendera's ownership interest in its fifteen Texas limited partnership subsidiaries that owned the properties, in exchange for the Foundation's payment of the "Net Purchase Price."

On December 30, 2003, the Foundation also entered into a two-page "Representation Agreement" with Gray & Co. and two other entities collectively defined as "Broker," under which Gray & Co. was entitled to receive a broker's commission in the amount of $900,000 if the sale transaction was consummated or closed.[3] The first

---

1. The Honorable Bea Ann Smith, Justice, Court of Appeals, Third District of Texas at Austin, Retired, sitting by assignment.

2. See, e.g., Orange County Appraisal Dist. v. Agape Neighborhood Improvement, Inc., 57 S.W.3d 597, 599 (Tex.App.-Beaumont 2001, pet. denied) (outlining property-tax exemptions once available under TEX. TAX CODE ANN. § 11.182 (Vernon Supp.2001)).

3. The Representation Agreement provided for a total of $2 million in broker's commission to be divided by three entities collectively defined as "Broker." Because Gray & Co. is the only entity that sued for its broker's com-

recital in the Representation Agreement states, "Gray & Co. has been engaged to facilitate the matters described in that certain contract (the 'Contract') dated December 30, 2003 by and between [Sendera] and [the Foundation]." It is undisputed that the "Contract" referenced throughout the Representation Agreement is the Contract of Sale between the Foundation and Sendera signed on the same day. As discussed below, Gray & Co.'s right to receive, and the Foundation's obligation to pay, broker's commission is described in detail in those agreements.

On December 30, 2003, Sendera also conditionally assigned to the Foundation the ownership interests in its subsidiary limited partnerships, which was described in the trial as a transfer of "nominal title" to the properties. Sendera agreed to this conditional transfer so that the Foundation could list itself as the beneficial owner of the properties on its applications for ad valorem tax exemptions before the law changed. Despite that transfer, the Foundation never paid Sendera the Net Purchase Price under the Contract of Sale, and in May 2005, the Foundation transferred title to the properties back to an affiliate of Sendera. During the time that it held title to the properties, the Foundation did not control the properties, collect rents, or otherwise benefit from the temporary transfer of nominal title. The Foundation did not pay broker's commission to any of the three brokers referenced in the Representation Agreement. In 2005, Gray & Co. sued the Foundation for breach of the Representation Agreement.

After a one-day bench trial, the trial court entered a take-nothing judgment against Gray & Co. At Gray & Co.'s request, the trial court also entered findings of fact and conclusions of law. The trial judge's findings of fact included a finding that "Sendera tentatively transferred title to the real property and the partnership interests without receiving the Net Purchase Price (as that term is used in the Contract of Sale). There was no payment to [Sendera] of the Net Purchase Price." The trial judge's conclusions of law included the conclusion that "[t]here was no 'closing' to trigger the commission obligation. There was no consummation of the transaction because there was no payment and there was no waiver of the payment obligation." The trial court also concluded that "[t]he Contract of Sale [ ] was at least implicitly incorporated into the Representation Agreement." After the trial court entered its findings of fact and conclusions of law, Gray & Co. timely perfected this appeal.

## ANALYSIS

In three points of error, Gray & Co. argues that the trial court erred in entering a take-nothing judgment against it. In its first point, Gray & Co. argues that the Foundation's obligation under the Representation Agreement to pay broker's commission was triggered when Sendera transferred beneficial ownership of the properties to the Foundation.[4] In its second point, Gray & Co. argues that the trial court erred in finding that the Contract of Sale was at least implicitly incorporated into the Representation Agreement. In its

mission, we refer only to Gray & Co. and to the $900,000 in commission that would have been its proportionate share of the total commission.

4. At the trial court, the Foundation also argued that the Representation Agreement was unenforceable because Gray & Co. is not licensed to sell securities and because the Contract of Sale describes the transfer of interests in limited partnerships, as opposed to real estate. We do not address this issue because it was not raised on appeal.

third point, Gray & Co. argues that the trial court incorrectly determined that Gray & Co. had the burden to prove that the Net Purchase Price was paid because the Foundation "failed to specifically deny [in its pleadings] that the Net Purchase Price was not paid." For the reasons set forth below, we overrule all three points.

### No Broker's Commission Due Under the Representation Agreement

In its first point of error, the crux of Gray & Co.'s argument is that the temporary transfer of nominal title to the properties was sufficient to "consummate" the transaction, as that undefined term is used in the Representation Agreement, and thus triggered the Foundation's obligation to pay broker's commission. In support of this argument, Gray & Co. cites to the Representation Agreement[5] and to three cases holding that a seller's broker is entitled to broker's commission under a listing agreement when the broker procures a ready, willing, and able buyer: *Goodwin v. Gunter,* 109 Tex. 56, 185 S.W. 295 (1916), *withdrawn on reh'g,* 109 Tex. 56, 195 S.W. 848 (1917); *Callaway v. Overholt,* 796 S.W.2d 828 (Tex.App.-Austin 1990, writ denied); and *Frady v. May,* 23 S.W.3d 558 (Tex.App.-Fort Worth 2000, pet. denied). We reject Gray & Co.'s reading of the Representation Agreement and its reliance on these cases.

Significantly, the language of the Representation Agreement itself expressly dictates that no broker's commission was owed to Gray & Co. under these circumstances.[6] Paragraph one states that the Foundation as Purchaser will pay broker's commission to Gray & Co. as Broker "[i]f

the transaction which is the subject of the Contract is consummated by Seller and Purchaser." The word "consummated" is not defined in the Representation Agreement. When words are not defined in a contract, we interpret them according to their plain and ordinary meaning. *See, e.g., United Servs. Auto. Assn. v. Pennington,* 810 S.W.2d 777, 779 (Tex.App.-San Antonio 1991, writ denied). The word "consummated" is commonly defined as "completed; fully accomplished." *See* BLACK'S LAW DICTIONARY 335 (8th ed.2004). Under the facts of this case, the transaction was not completed or accomplished by both Seller and Purchaser because the Foundation as Purchaser did not perform its obligation to pay Sendera the Net Purchase Price for the properties.

We reach the same conclusion under paragraph two of the Representation Agreement. Under that paragraph, the Foundation as Purchaser agreed to pay broker's commission to Gray & Co. "[i]f on or before December 30, 2004, Purchaser closes the purchase described in the Contract." The word "close" is not defined in the Representation Agreement, so we interpret it according to its plain and ordinary meaning. *See, e.g., United Servs.,* 810 S.W.2d at 777. The word "closing" is a term of art commonly used in real-estate transactions and is defined as "[t]he final meeting between the parties to a transaction, at which the transaction is consummated; esp., in real estate, the final transaction between the buyer and seller, whereby the conveyancing documents are concluded and the money and property transferred." BLACK'S LAW DICTIONARY 272 (8th ed.2004). Under the facts of this

---

5. There is no evidence in the record regarding which party drafted any of the agreements at issue.

6. Because neither party alleges that the Representation Agreement is ambiguous, its inter-

pretation is a question of law, which we review de novo. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.,* 995 S.W.2d 647, 650 (Tex. 1999).

case, the transaction was never closed by the Foundation as Purchaser because there was no final meeting at which the Foundation transferred the Net Purchase Price to Sendera.

This case is materially distinguishable from the cases cited by Gray & Co. *Goodwin, Callaway,* and *Frady,* all involve real-estate agents who represented sellers and all stand for the well-settled rule of contract construction that when sellers of real estate enter into a standard listing agreement with a broker, that broker is entitled to the contracted-for broker's commission if the broker procures a "ready, willing, and able buyer," even if the transaction is not consummated. *See, e.g., Callaway,* 796 S.W.2d at 832 ("Unless the parties expressly contract otherwise, the broker is entitled to a commission *at the time* he procures a buyer ready, willing, and able to make an enforceable contract to purchase the seller's property on terms acceptable to him."). These cases are inapposite to Gray & Co.'s claim for three reasons. First, in this case, Gray & Co. was a buyer's agent. Accordingly, cases dictating when broker's commission is impliedly due to a seller's broker do not apply. Second, Gray & Co. and the Foundation expressly contracted that Sendera as Seller and the Foundation as Purchaser *both* had to consummate the transaction. Even if Gray & Co. had been a seller's agent, procuring a "ready, willing, and able buyer" would not entitle it to broker's commission because the parties expressly agreed to the contrary. *See, e.g., Callaway,* 796 S.W.2d at 832 (rule of construction in cases involving seller's agents only applies "in the case of implied contracts or in an express contract *where there is no special agreement to the contrary regarding whether and when the broker's commission shall be legally due and payable.*") (emphasis added). Finally, Gray & Co. and the Foundation also expressly agreed to the contrary when they contracted to allow the Foundation to default or change its mind about consummating or closing the transaction, and thereby avoid the obligation to pay a broker's commission:

> *No Obligation to Consummate Transaction.* Broker acknowledges that Purchaser and/or its affiliates have no obligation to continue negotiations with respect to the transaction which is the subject of the Contract and that no fee is payable if the transaction which is the subject of the Contract fails to close for any reason, including default by Purchaser or any other party.

Construing the Representation Agreement as a whole, we conclude that broker's commission was not owed to Gray & Co. under the undisputed facts of this case. *See Kelley–Coppedge, Inc. v. Highlands Ins. Co.,* 980 S.W.2d 462, 464 (Tex.1998) (contracts should be construed as a whole, giving meaning to all provisions so that none are rendered meaningless); *see also Callaway,* 796 S.W.2d at 832 (noting that parties "may contract, for example, that the broker's legal right to a broker's commission shall be contingent upon an actual 'sale' of the property in the sense of conveyance of legal title in exchange for payment of the purchase price.") (citations omitted).

### No Broker's Commission Due Under the Contract of Sale

In its second point of error, Gray & Co. notes that the Representation Agreement does not contain an integration clause specifically incorporating the Contract of Sale and argues that the trial court erred in its conclusion of law that the Contract of Sale "was at least implicitly incorporated into the Representation Agreement." We reject this proposition.

We review a trial court's conclusions of law de novo to determine whether they are correct. *See Cohn v. Comm'n for Lawyer Discipline*, 979 S.W.2d 694, 697 (Tex.App.-Houston [14th Dist.] 1998, no pet.). Conclusions of law must be upheld on appeal if any legal theory supported by the evidence sustains the judgment, and will be reversed only if the conclusions are erroneous as a matter of law. *Cohn*, 979 S.W.2d at 697.

■■■ Under Texas law, "instruments pertaining to the same transaction may be read together to ascertain the parties' intent," and "in appropriate instances, courts may construe all the documents as if they were part of a single, unified instrument." *Fort Worth Indep. Sch. Dist. v. Fort Worth*, 22 S.W.3d 831, 840 (Tex.2000). An integration clause is not required in order to incorporate one document into another. *See, e.g., Castroville Airport, Inc. v. City of Castroville*, 974 S.W.2d 207, 211 (Tex.App.-San Antonio 1998, no pet.) (citing *Owen v. Hendricks*, 433 S.W.2d 164, 166 (Tex. 1968)). Instead, all that is required is that the incorporated document be referenced by name. The reason that an incorporated document only has to be referenced by name is that "[c]ontracting parties are obligated to protect themselves by reading what they sign and are presumed, as a matter of law, to know the contract's terms." *Castroville*, 974 S.W.2d at 211. This obligation would logically and necessarily include knowing the terms of any separate sales contract explicitly referenced in a representation agreement.

■■■ In this case, it is beyond dispute that the two-page Representation Agreement explicitly references the Contract of Sale, by name, six separate times. And in one instance, the Representation Agreement expressly invites the parties to consult the terms of the Contract of Sale: "In addition to the Initial Commission payable at Closing, in the event that Seller earns Earn–Out Payments (as provided in Article 2 of the Contract). . . ." Apart from this specific Contract of Sale, the Representation Agreement has no purpose. Accordingly, the trial court correctly concluded that the Contract of Sale, which was expressly referenced six times, was implicitly incorporated into the Representation Agreement.

Having properly determined that it was implicitly incorporated into the Representation Agreement, the trial court could refer to the terms of the Contract of Sale as they relate to Gray & Co.'s claim for its broker's commission. Like the Representation Agreement, the Contract of Sale expressly provides that the Foundation is only obligated to pay broker's commission if it pays the Net Purchase Price to Sendera:

11.1 *Brokerage Commission.* ... Purchaser hereby agrees to pay at Closing a commission pursuant to and in accordance with [the Representation Agreement]; *provided however* that Purchaser's obligation to pay, and Brokers' right to receive, this commission or any other amount with respect to the Contract is expressly conditioned upon Closing the sale and transfer of the Ownership Interests and Seller's receipt of the Net Purchase Price under this Contract. *Brokers shall not have any right to receive this commission or any other amount with respect to this Contract unless and until Closing shall be final and fully consummated and the Net Purchase Price has been paid as provided in this Contract* ...

(Emphasis added.) The Contract of Sale also defines "Closing" as "the consummation of the purchase and sale of the Ownership Interests" and requires the Foundation to place the Net Purchase Price in escrow one day before the Closing Date,

which it never did. Construing the Contract of Sale as a whole and in conjunction with the Representation Agreement, we conclude that the terms of the Contract of Sale preclude Gray & Co.'s claim for its broker's commission under the undisputed fact that the Net Purchase Price was never paid or received. *See Kelley–Coppedge, Inc.,* 980 S.W.2d at 464; *see also Callaway,* 796 S.W.2d at 832.

## The Foundation Adequately Denied Payment of the Net Purchase Price

In its final point of error, Gray & Co. argues that because it pleaded that all conditions precedent to its recovery for breach of contract had occurred, and the Foundation did not specifically deny in its pleadings that the Net Purchase Price was not paid, Gray & Co. was not obligated to prove that the Net Purchase price was paid in order to be entitled to its broker's commission. Gray & Co. is wrong under the facts and the law.

In its first amended answer, the Foundation specifically pleaded that there was no closing or performance under the terms of the Representation Agreement and that "the fundamental condition precedent to the right of [Gray & Co.] to collect any fee at all from the [Foundation] has not ever taken place." Pleading that a condition precedent "has not ever taken place" is equivalent to specifically denying that it occurred, and thereby shifts the burden to the other party to prove that it did occur. *See* TEX.R. CIV. P. 54 (party must prove conditions precedent that are denied by opposite party); *see also Betty Leavell Realty Co. v. Raggio,* 669 S.W.2d 102, 104 (Tex.1984) (to recover commission, broker had burden to prove specific condition precedent occurred because seller specifically denied it). Here, the parties in this case stipulated that the Net Purchase Price was never paid. Accordingly, Gray & Co. did not and could not meet its burden of proving that this condition precedent occurred.

## CONCLUSION

For the foregoing reasons, Gray & Co.'s three points of error are overruled and the trial court's judgment is affirmed.