# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-20170
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
May 12, 2016

Lyle W. Cayce
Clerk

NABORS COMPLETION & PRODUCTION SERVICES COMPANY,

> Plaintiff - Appellant

v.

CHESAPEAKE OPERATING, INCORPORATED; GREAT PLAINS
OILFIELD RENTAL, L.L.C.,

> Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:13-CV-1159

Before WIENER, HIGGINSON, and COSTA, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:*

Defendant Great Plains Oilfield Rental, LLC leased a "frac tank" to co-defendant Chesapeake Operating, Inc., which contracted to have plaintiff Nabors Completion & Production Services Co. haul the tank between two locations in Oklahoma. Two tires on the tank trailer blew out and the tank

---

* Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

No. 15-20170

scraped along the pavement, sparking a sizable fire. Nabors appeals the district court's summary judgment in favor of Defendants. We affirm.

I.

Nabors provides services for oil, gas, and mineral well-drilling operations. In July 2001, Nabors (then known as Pool Company Texas LTD) entered into a Master Service Agreement (MSA) whereby Nabors became an approved independent contractor for Chesapeake. The MSA included indemnification and other provisions allocating responsibilities and liabilities between the two companies.

On March 22, 2011, pursuant to the MSA, Nabors employee Billy Bridge was hauling a frac tank trailer between Shattuck, Oklahoma, and Leedey, Oklahoma. The trailer was leased from Great Plains to Chesapeake. Bridge inspected the trailer—including the tires—before beginning the approximately two-hour trip, and again when he stopped for a bite to eat. On both inspections, the tires looked to be in good condition and properly maintained. Yet when Bridge was halfway to his destination and traveling at about fifty-five miles per hour,[1] both left rear tires on the trailer blew out in quick succession. The tank scraped the pavement, throwing off sparks that landed on dead grass and started a large fire. That fire caused significant property damage, and Nabors negotiated with the affected landowners settlements totaling $1.65 million and releasing from further liability both Nabors and Chesapeake.

Nabors filed this lawsuit in Texas state court in March 2013, and Chesapeake removed it to federal court on the ground of diversity jurisdiction. Chesapeake then unsuccessfully moved to transfer the action to the Western District of Oklahoma. Following discovery and the filing of cross-motions for

---

[1] The speed limit was sixty-five miles per hour. Bridge did not receive a traffic citation, and no party claims that he drove negligently or recklessly.

No. 15-20170

summary judgment, the district court granted summary judgment in favor of Defendants. This appeal timely followed.

II.

"We review a district court's grant of summary judgment de novo, applying the same standard on appeal as that applied below." *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists if a reasonable jury could find for the nonmovant. *Rogers*, 755 F.3d at 350. We may affirm on any ground raised below and supported by the record. *Id.*

III.

Nabors challenges the district court's summary judgment on its claims for (A) contractual indemnification and (B) contribution. We find no genuine dispute as to any material fact on either claim.

A.

The indemnity claim turns on Texas contract law, which directs us to "presume that the parties to a contract intend every clause to have some effect" and "give terms their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense." *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996).

Nabors first contends that the district court erred when it interpreted Section 2.3 of the MSA, which provides in relevant part:

> [Nabors] agrees to visually inspect all materials and equipment furnished by [Chesapeake] directly employed in the course of operations conducted hereunder and shall notify [Chesapeake] of any apparent defects therein before using such materials and equipment. [Nabors] shall assume no liability related to any [Chesapeake] provided materials and services. [Nabors] shall not be liable for claims due solely to latent defects.

No. 15-20170

The district concluded that (1) the penultimate quoted sentence did not shift all liability from the underlying accident to Chesapeake, because the accident did not relate to Chesapeake-provided "materials and services"; and (2) under the last quoted sentence, Chesapeake would be liable to Nabors if the accident arose solely from "latent defects" in the tires; but (3) there was "no evidence that a latent defect was the sole cause of the accident."

Nabors does not contest that the frac tank trailer and its tires are "equipment" (and not "materials") within the meaning of the MSA. But Nabors urges that even though the penultimate sentence refers only to "materials and services," it should be read to encompass "equipment" also, because "the entire Section 2.3 pertains to materials, equipment, and services." We disagree. Section 2.3 uses the words "materials" and "equipment" in three other sentences, and the heading encompassing the section refers separately to "LABOR, EQUIPMENT, MATERIALS, SUPPLIES AND SERVICES." Yet the sentence at issue omits "equipment." This omission appears deliberate. *See FPL Energy, LLC v. TXU Portfolio Mgmt. Co.*, 426 S.W.3d 59, 68 (Tex. 2014) ("We will not, as TXUPM urges, selectively import terms from other provisions to compensate for the absence of the term 'energy'; rather, we conclude that the omission was intentional and deliberate."). And as the Supreme Court of Texas has explained, "courts will not rewrite agreements to insert provisions parties could have included or to imply restraints for which they have not bargained." *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 646 (Tex. 1996). We therefore agree with the district court that Section 2.3 does not shift liability related to "equipment"—including the frac tank trailer—to Chesapeake.

Next, Nabors contends that the district court overlooked a genuine issue of material fact as to whether the accident was caused solely by "latent defects" in the tires. The MSA does not define "latent defects," and "[w]hen words are

4

not defined in a contract, [Texas courts] interpret them according to their plain and ordinary meaning." *Gray & Co. Realtors, Inc. v. Atl. Hous. Found., Inc.*, 228 S.W.3d 431, 434 (Tex. App. 2007). We thus construe this term as referring to "[a] product imperfection that is not discoverable by reasonable inspection and for which a seller or lessor is generally liable if the flaw causes harm." *Latent Defect*, BLACK'S LAW DICTIONARY (10th ed. 2014); *see Gray*, 228 S.W.3d at 434 (looking to Black's Law Dictionary for the meaning of an undefined contract term).

We agree with the district court that Nabors failed to raise a genuine issue of material fact as to whether the damages at issue were caused *solely* by a latent defect. Bridge, who was hauling the tank at the time of the incident, was unable to pinpoint a reason for the blowout; he testified that "sometimes blowouts just happen," even with "brand new tire[s]," and that Nabors viewed the incident as an "uncontrollable accident." Bridge further testified that the tires appeared properly maintained, that strong winds at the time of the incident resulted in "a lot more weight on the left side of . . . the trailer," and that the blowouts occurred when he "came down through a low spot" on the highway. An expert retained by Nabors opined that the tires "had bluing and wrinkling in the sidewalls" attributable to "overdeflection (either underinflation or over loading)," and stated that "[t]he exact cause of the failure of the tires was not known." That expert offered no opinion on when the bluing and wrinkling occurred, or on whether the accident was attributable to any latent or preexisting defect. Nabors appears to argue that this absence of evidence as to whether the tires were defective itself constitutes evidence that the blowout was caused solely by a latent defect, but we disagree: as the opponent of a properly supported summary-judgment motion, Nabors had the burden of "com[ing] forward with evidence to support the essential elements of its claim." *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd.*, 40 F.3d 698, 712

(5th Cir. 1994). Because Nabors failed to do so, the district court properly determined that there was no triable issue as to Chesapeake's liability for damages "due solely to latent defects."

Finally, Nabors argues that aside from any latent defect, the district court overlooked evidence that Chesapeake's or Great Plains's negligence in maintaining the frac tank trailer caused the blowout, and that Defendants are therefore required to indemnify Nabors under Section 6.5 of the MSA. That section requires Chesapeake to "protect, defend, indemnify and hold harmless [Nabors] . . . from and against all claims . . . arising from the acts of [Chesapeake] in favor of third parties and persons not employed or contracted by [Nabors or Chesapeake] on account of . . . damage to property." In support of this argument, Nabors points to evidence that (1) Great Plains was responsible for maintaining its equipment, (2) an inspection report completed two weeks after the left tires of the trailer blew out noted different issues with other tires on the right side of the trailer, and (3) another Great Plains trailer had a similar blowout incident months after the accident in suit.[2]

We first note that the MSA does not mention Great Plains, that the operative complaint does not allege that Great Plains is a party to the MSA, and that Nabors cites no evidence for its implicit proposition that Section 6.5 imposes indemnification obligations on Great Plains or for Great Plains's conduct. But even assuming that Great Plains's conduct is relevant to Section 6.5 of the MSA, Nabors points to no evidence that, and articulates no theory

---

[2] In its reply brief, Nabors asserts that, under Section 6.5 of the MSA, it is "seeking indemnity due to Chesapeake's act[s] of supplying Nabors with a trailer that had tires with latent defects and negligently maintaining the trailer." Nabors did not mention Chesapeake's conduct in its original brief's discussion of Section 6.5, and "we do not consider arguments raised for the first time in a reply brief," *United States v. Transocean Deepwater Drilling, Inc.*, 767 F.3d 485, 492 (5th Cir. 2014). Even if we were to consider this argument, Nabors's contentions based on a latent defect fail for the reasons explained above and Nabors points to no other evidence that Chesapeake "negligently maintain[ed] the trailer."

No. 15-20170

for how, Great Plains's purported negligence caused the damage resulting from the March 22, 2011 fire—which predated all of the evidence on which Nabors relies.  Thus, like Nabors's other contentions, its argument based on Section 6.5 of the MSA fails to show that the district court erred in granting summary judgment on its indemnity claim.

## B.

Nabors also argues that the district court erred in dismissing its claim for contribution, which Nabors contends is controlled by Oklahoma law because it hinges on tort principles that would have governed if the Oklahoma landowners whose property was damaged had filed lawsuits against Nabors and Chesapeake.

But Defendants strongly argue that Nabors should be estopped from arguing that Oklahoma law applies to this claim.  "Judicial estoppel has three elements: (1) The party against whom it is sought has asserted a legal position that is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently."  *Flugence v. Axis Surplus Ins. Co. (In re Flugence)*, 738 F.3d 126, 129 (5th Cir. 2013).  In opposition to Defendants' motion to transfer this action to a district court in Oklahoma, Nabors categorically stated that "Texas law applies to this dispute" and that the lawsuit should therefore stay in the Southern District of Texas with a court "more familiar with Texas law, which governs."  Nabors also stressed that the "underlying tort" was not at issue in this case.  The district court then denied the transfer motion.  Against this inconsistent and intentional prior legal position on a matter decided in its favor, Nabors provides no record citation for its reply argument that it "has consistently asserted that its contractual claims are governed by Texas law . . . and its contribution claims are governed by

No. 15-20170

Oklahoma law." We thus conclude that Nabors is estopped from arguing that Oklahoma law should apply.[3]

And Texas law is clear that Nabors—which settled all claims with the landowners before any judgment was entered against it—is not, under the comparative negligence statute it cites in the alternative,[4] entitled to contribution. *See Int'l Proteins Corp. v. Ralston-Purina Co.*, 744 S.W.2d 932, 934 (Tex. 1988) ("We [have held] that a settling defendant did not have a right to contribution at common law, or under the comparative negligence statute . . . ." (citations omitted)); *Beech Aircraft Corp. v. Jinkins*, 739 S.W.2d 19, 20–21 (Tex. 1987) (holding that an adverse judgment is an "essential prerequisite to contribution" and rejecting a settling defendant's claim for contribution). Thus, the district court properly granted summary judgment on this claim as well.

## IV.

For the reasons stated, we AFFIRM the judgment of the district court.

---

[3] We also note that Nabors has failed to brief the forum state's choice-of-law rules. *See Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 770 (5th Cir. 2016) ("A federal court sitting in diversity applies the forum state's choice-of-law rules to determine which substantive law will apply.").

[4] *See* Tex. Civ. Prac. & Rem. Code § 33.001 *et seq.*