# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-20831

United States Court of Appeals
Fifth Circuit

**FILED**

March 22, 2018

Lyle W. Cayce
Clerk

GLORIA WELLS,

      Plaintiff - Appellant

v.

MINNESOTA LIFE INSURANCE COMPANY,

      Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before STEWART, Chief Judge, and JOLLY and OWEN, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This appeal addresses coverage for a mosquito bite under an accidental-death insurance policy. Melton Dean Wells was bitten by a mosquito carrying West Nile Virus. Following complications, he died. Melton's wife claimed accidental-death benefits under a policy with Minnesota Life Insurance Company, but Minnesota Life denied her claim. The district court dismissed her suit on summary judgment. On appeal, the parties dispute the insuring clause, *i.e.* whether Melton's death was accidental, and an exclusion under the policy, *i.e.* other causes of Melton's death. Because we hold that there are genuine disputes of material fact as to both, we reverse and remand for a

No. 16-20831

factfinder to decide determinative facts of the breach-of-contract claim. We affirm the district court's dismissal of the bad-faith tort claim.

I.

Melton Dean Wells, age 68, went to the hospital on August 21, 2013, with a history of obesity, diabetes, and hypertension.[1] He was suffering from a fever, headache, and altered mental status, and the doctors ultimately diagnosed him with West Nile Encephalitis ("WNE"). West Nile Virus ("WNV"), carried and transmitted to humans by the Culex mosquito, causes WNE. Over the next three weeks, Melton's condition deteriorated as he developed respiratory failure, multi system organ failure, and septic shock. He died on September 17. The certified death certificate ("CDC") reads:

| | |
|---|---|
| IMMEDIATE CAUSE (final disease or condition resulting in death) | a. WESTNILE ENCEPHALITIS |
| [C]onditions . . . leading to the cause listed on line a. Enter the UNDERLYING CAUSE (disease or injury that initiated the events resulting in death) LAST | b. ACUTE RESPIRATORY FAILURE |
| | c. SEPTIC SHOCK |
| | d. MULTI SYSTEM FAILURE |

The certifying physician marked Melton's death as "natural", in contrast to an "accident," on the CDC.

At all times relevant to this appeal, Melton had a Decreasing Term Accidental Death Insurance Policy ("the policy") from Minnesota Life Insurance Company ("Minnesota Life"), which provides coverage

> only when your death results, directly and independently from all other causes, from an accidental bodily injury which was

---

[1] Hospital documentation shows Melton's full medical history includes "Type 2 diabetes mellitus, no complications known, control uncertain, obesity, hyperlipidemia, benign prostatic hypertrophy, chronic venous insufficiency/ankle edema . . . [p]olyarticular osteoarthritis [and] lower extremity cellulitis."

unintended, unexpected and unforeseen. The bodily injury must be evidenced by a visible contusion or wound . . . . The bodily injury must be the sole cause of your death. . . . Your death must occur within 90 days after the date of the accidental injury.

But even if a death falls within that insuring clause, coverage may still be excluded. Important here, Exclusion Four reads:

In no event will we pay the accidental death benefit where your death is caused directly or indirectly by, results from, or there is contribution from . . . bodily or mental infirmity, illness or disease . . . .

The terms "accidental bodily injury," "contusion," "wound," "infirmity," "illness," and "disease" are not defined in the policy.

Following Melton's death, his wife, Gloria Wells, submitted a claim under the policy for payment of accidental-death benefits. Over the phone, she explained to a Minnesota Life representative that a mosquito bite caused Melton's death. Nevertheless, Minnesota Life denied her claim, explaining:

We have received no information to support that [Melton's] death resulted directly and independently from any accidental bodily injury sustained. Rather it appears the severe [WNE] was exacerbated by his diabetes, morbid obesity and his age.

The claim is not payable as an accidental bodily injury did not cause [Melton's] death, directly and independently from all other causes. Rather, his death was due or there were contributions from bodily or mental infirmity, illness or disease and this is specifically excluded under the terms of the policy.

## II.

Unhappy with the denial of her insurance claim, Gloria filed this diversity suit against Minnesota Life in Texas federal court, claiming breach of contract, breach of good faith and fair dealing, violation of the Texas Insurance Code, and violation of the Texas Deceptive Trade Practices Act. In her complaint, she alleges that her insurance claim falls within the insuring clause of the policy because Melton's mosquito bite, a visible contusion/wound,

was an unintended, unexpected, and unforeseen accidental bodily injury that resulted in the WNE that was a "substantial factor in bringing about [Melton's] death."

Minnesota Life moved for summary judgment on all claims, and the district court granted its motion. The district court held that Gloria's insurance claim did not fall under the insuring clause for three reasons. First, the court held that Gloria did not satisfy the "sole cause" requirement because septic shock, acute respiratory failure, and multi system failure all contributed to Melton's death, in addition to the WNE. Second, the court held that Gloria failed to introduce evidence showing that a mosquito bite is or should be considered "accidental" under the policy. And finally, the court held that Gloria offered no evidence of a visible wound or contusion in the form of a mosquito bite.

Then, turning to the policy exclusion, the district court held that, even if Gloria's insurance claim did fall under the insuring clause, benefits should not be paid because her claim also fell under Exclusion Four of the policy. The court noted Melton's "bodily infirmities"—obesity, diabetes, and hypertension—and his "conditions"—acute respiratory failure, septic shock, and multi-system failure—then held Gloria's claim excluded because she "did not rebut evidence of multiple contributing causes" to Melton's death. It is unclear whether the court was referring to Melton's infirmities, conditions, or both.

Following the district court's judgment in favor of Minnesota Life, Gloria moved for a new trial or, alternatively, to amend the judgment. The district court denied that motion, and Gloria timely appealed. Specifically, she now appeals the dismissal of her breach-of-contract and bad-faith claims and the denial of her post-judgment motion.

4

No. 16-20831

III.

We review a district court's grant of summary judgment de novo. *Crose v. Humana Ins. Co.*, 823 F.3d 344, 347 (5th Cir. 2016). Summary judgment is appropriate only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003). "We resolve factual controversies in favor of the nonmoving party, but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). When such contradictory facts exist, courts may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

IV.

We turn first to Gloria's breach-of-contract claim. In this diversity suit, "we are *Erie* bound to apply the underlying state law, that of the State of Texas." *Messick v. Gen. Motors Corp.*, 460 F.2d 485, 486–87 (5th Cir. 1972).

To establish a breach-of-contract-claim under Texas law, a plaintiff must show: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach." *Hunn v. Dan Wilson Homes, Inc.*, 789 F.3d 573, 579 (5th Cir. 2015). The only breach-of-contract issue in this case is whether Minnesota Life breached the policy by denying Gloria's claim for benefits. Texas law "places the burden of establishing coverage upon the insured [and] the burden of establishing an exclusion upon the insurer." *Century Sur. Co. v. Hardscape Const. Specialties Inc.*, 578 F.3d

5

262, 265 (5th Cir. 2009).  Thus the burden is on Gloria to show coverage and upon Minnesota Life to establish an exclusion.

"Insurance policies are controlled by rules of interpretation and construction which are applicable to contracts generally." *Nat'l Union Fire Ins. Co. of Pittsburgh v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995).  "[T]he courts have adopted the ordinary meaning of words and terms as they are commonly understood by the average laymen in preference to a technical meaning as understood by members of a profession . . . ."  *Order of Ry. Conductors of Am. v. Gregory*, 91 S.W.2d 1139, 1141 (Tex. Civ. App. 1936); *see also Certain Underwriters at Lloyds, London v. Law*, 570 F.3d 574, 577 (5th Cir. 2009) ("Words not defined in a contract are to be understood 'according to their plain and ordinary meaning.'" (quoting *Gray & Co. Realtors, Inc. v. Atl. Hous. Found., Inc.,* 228 S.W.3d 431, 434 (Tex. App. 2007)).

If, after applying those rules of contract interpretation, a contract provision is "subject to two or more reasonable interpretations," that provision is ambiguous.  *Sekel v. Aetna Life Ins. Co.*, 704 F.2d 1335, 1337 (5th Cir. 1983) (quoting *Glover v. Nat'l Ins. Underwriters*, 545 S.W.2d 755, 761 (Tex. 1977)). We construe ambiguities in Texas insurance contracts against the insurer, *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 866 (Tex. 2000), so "if a contract of insurance is susceptible of more than one reasonable interpretation, we must resolve the uncertainty by adopting the construction that most favors the insured."  *Nat'l Union Fire Ins. Co. of Pittsburgh v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991).  "In particular, exceptions or limitations on liability are strictly construed against the insurer and in favor of the insured."  *Id.*

No. 16-20831

A.

To carry her burden of establishing coverage, Gloria must show that her claim for benefits falls within the insuring clause of the policy.[2] She says that her claim is covered because Melton's mosquito bite (1) was a visible contusion/wound, (2) was an unintended, unexpected, and unforeseen accidental bodily injury, and (3) directly and independently was the sole cause of his death. Minnesota Life, like the district court, focuses on three portions of the insuring clause to argue that Gloria's claim is not covered: accidental bodily injury, sole cause, and wound/contusion. We take each in turn, beginning with accidental bodily injury.

1.

Accidental Bodily Injury

The foundation of the insuring clause, and the policy itself, is an "accidental bodily injury which was unintended, unexpected, and unforeseen." Gloria says the accidental bodily injury in this case is the bite from a WNV-infected Culex mosquito. The policy does not explicitly define "accidental bodily injury," but the parties focus on whether Melton's injury was "unintended, unexpected, and unforeseen;" and so do we.[3] The dispute is whether Melton's injury fits that description.

---

[2] We repeat, the insuring clause reads:

> [C]overage under this policy will provide benefits only when your death results, directly and independently from all other causes, from an accidental bodily injury which was unintended, unexpected and unforeseen. The bodily injury must be evidenced by a visible contusion or wound . . . . The bodily injury must be the sole cause of your death. . . . Your death must occur within 90 days after the date of the accidental injury.

[3] Black's Law Dictionary defines "accident" as "[a]n unintended and unforeseen injurious occurrence; something that does not occur in the usual course of events or that could not be reasonably anticipated; any unwanted or harmful event occurring suddenly, as a collision, spill, fall, or the like, irrespective of cause or blame . . . ." ACCIDENT, *Black's Law Dictionary* (10th ed. 2014).

7

No. 16-20831

Gloria argues that Melton did not intend, expect, or foresee that a WNV-infected Culex mosquito would bite him, an obvious bodily injury.[4]  In support, she points to the testimony of Matthew Virnig, Minnesota Life claims examiner, who testified that there was no question in his mind "initially" that the cause of Melton's death was unintended, unexpected, and unforeseen.  And we find no direct evidence in the record that Melton intended, expected, or foresaw that such a perilous bite would befall him.  Instead, Gloria expressed her view that the WNV-infected bite was unexpected, explaining that she was "having [her] doubts about God right now because . . . a mosquito got him out there and killed him a month later."

Minnesota Life, on the other hand, would define Melton's alleged accidental bodily injury more broadly to show that it does not fit the definition in the policy.  Instead of focusing on Melton's bite from a WNV-infected Culex mosquito, Minnesota Life argues that a mosquito bite generally is not unexpected and unforeseen in Texas.  But a bite by a generic mosquito is not the accidental injury Gloria pleaded in her complaint; instead, she says it is the bite by a WNV-infected Culex mosquito that triggers coverage.  Without guidance from the policy as to how broadly or narrowly an "accidental bodily injury" is to be defined, we take the facts of the alleged accidental injury as Gloria contends.

Minnesota Life then expands its argument to say that WNV is most commonly transmitted to humans through WNV-infected Culex mosquito bites, and when a virus is contracted through "normal means brought about by everyday life," it cannot be deemed an unexpected or unforeseen accident.

---

[4] In 2013, accidents accounted for 5.2% of deaths in Texas.  *Leading Causes of Death by Race Ethnicity Texas 2013*, TEX. HEALTH & HUM. SERVS. (Sept. 14, 2015), https://www.dshs.texas.gov/chs/vstat/vs13/t16.aspx.  West Nile Virus accounted for .0078%. *West Nile Virus Disease Cases and Presumptive Viremic Blood Donors by State, 2013*, CDC, https://www.cdc.gov/westnile/resources/pdfs/data/2013WNVHumanInfectionsbyState.pdf.

*Svensson v. Securian Life Ins. Co.*, 706 F. Supp. 2d 521, 532 (S.D.N.Y. 2010). But the case Minnesota Life cites for that proposition is inapposite. In *Svensson v. Securian Life Insurance Co.*, an insured died of a "respiratory illness which she developed after inhaling a community-spread bacterial pathogen." *Id.* at 523. In affirming the denial of accidental-death benefits, the New York district court quoted then-Judge Cardozo's "common sense approach" to accidental injury:

> Germs may indeed be inhaled through the nose or mouth, or absorbed into the system through normal channels of entry. In such cases their inroads will seldom, if ever, be assignable to a determinate or single act, identified in space or time. For this as well as for the reason that the absorption is incidental to a bodily process both natural and normal, their action presents itself to the mind as a disease and not an accident.

*Id.* at 528 (quoting *Connelly v. Hunt Furniture Co.*, 147 N.E. 366, 367 (1925)). Here, however, there was a determinate, single act—the bite—that is not incidental to a bodily process. The mosquito, an external "physical" force, affirmatively acted to cause Melton harm and produce an unforeseen result. We find that inhaling a community-spread pathogen and being bitten by a mosquito can be thinly sliced so as to be distinguishable.

The only record evidence that Minnesota Life offers to rebut the accidental nature of Melton's death is the death certificate. To be sure, the CDC lists Melton's death as "natural," which the district court relied on in arriving at its conclusion that coverage should be denied. But "[t]he recitation in the death certificate is at best prima facie evidence" that a death is or is not covered under an insurance policy. *Stroburg v. Ins. Co. of N. Am.*, 464 S.W.2d 827, 829 (Tex. 1971). And here, Gloria's testimony regarding her shock at Melton's bite, Virnig's testimony that he initially believed "the cause of Melton's death" was an accidental bodily injury, and the fact that Melton's WNV is assignable to an unnatural, determinate act allows a factfinder to

No. 16-20831

conclude that Melton's mosquito bite was unintended, unexpected, and unforeseen and, consequently, an accidental bodily injury under the policy.[5] Therefore, the district court erred in relying solely on the CDC to conclude that there is no issue of material fact as to whether Melton's mosquito bite was an "accidental bodily injury." It is a question for a factfinder.

2.

Sole Cause

Next, we consider whether Gloria has created a genuine dispute regarding the "sole cause" of Melton's death. We turn first to the relevant words of the insuring clause:

> [C]overage under this policy will provide benefits only when your death results, directly and independently from all other causes . . . . The bodily injury must be the sole cause of your death.

We find a guide path in *Mutual Benefit Health & Accident Association v. Hudman.* 398 S.W.2d 110 (Tex. 1965). The Texas Supreme Court held that, to recover benefits under an accidental-death policy that limits coverage to death from an accidental injury "independently of other causes," the accident must be the "sole proximate cause" of death.[6] *Id.* at 112–13; *see Sekel*, 704 F.2d

---

[5] We think it is possible, under this policy, for a factfinder to come down on either side of whether a mosquito bite is an "accidental bodily injury." This is to say that a mosquito bite is not categorically covered (or not covered) under accidental-death policies generally or even under this particular policy. To be sure, we hold in this case that the factual circumstances make it a disputed issue. As *Lambrecht & Associates, Inc. v. State Farm Lloyds* reminds us, Texas "[c]ourts determine whether certain conduct constitutes an 'accident' for purposes of insurance coverage on a case-by-case basis." 119 S.W.3d 16, 21 (Tex. App. 2003) (analyzing "accidental loss" in business insurance policy).

[6] The Texas Supreme Court was careful to distinguish between the sole-cause test applicable here and a but-for test, explaining:

> It solves nothing when applying a sole-cause test, to resort to a but-for test . . . . When we have two concurring factors which produce death, one within and the other without the policy coverage, results under such a test would depend upon the factor to which the test is applied. It is a true statement that Hudman's death would not have occurred but for his overexertion, the bodily injury and accidental cause. It is also true that his death would not have occurred but for

at 1337 ("In Texas and most other jurisdictions ["directly and independently"] clauses have been construed to preclude recovery where disease or bodily infirmity is a concurrent proximate cause of death."); *Stroburg*, 464 S.W.2d at 829. Texas courts define "proximate cause" as "that cause, unbroken by any new and independent cause, that produces injury and without which the injury would not have occurred." *Tex. Campaign for the Env't v. Partners Dewatering Int'l, LLC*, 485 S.W.3d 184, 197 (Tex. App. 2016); *see Stroburg*, 464 S.W.2d at 831 ("'[P]roximate cause' as applied in insurance cases has essentially the same meaning as that applied by our own courts in negligence cases . . . ."). So in order to recover benefits, the mosquito bite must be the sole proximate cause of Melton's death, with no concurrent proximate causes acting alongside it.[7]

With that theory of causation in mind, we turn to this case. Minnesota Life argues that "sole cause" should be interpreted to mean that the accidental bodily injury must be the only proximate cause of death, *regardless* of how any such concurrent proximate causes may have originated. As discussed previously, the CDC lists acute respiratory failure, septic shock, and multi system failure, as "diseases, injuries, or complications that directly caused the

---

the pre-existing heart disease, the non-accidental cause. If we apply the but-for test to the accidental bodily injury, we can say that the death would not have occurred but for the overexertion and the plaintiff would win. When we apply the same test to the other concurring cause, the non-accidental heart disease, we get an opposite result. This is so because the death would not have occurred but for the non-accidental heart disease, and the plaintiff would lose.

*Hudman*, 398 S.W.2d at 113.

[7] We note that Minnesota Life says that Gloria must show "[WNE] was the sole cause of [Melton's] death, exclusive of any other *contributing* cause." But that misstates Gloria's burden; she must show WNE was the sole cause of Melton's death, exclusive of any other *proximate* cause. *See Sekel*, 704 F.2d at 1337 (distinguishing between a "contributing factor" and "concurrent proximate" cause).

death." Thus, Minnesota Life says that, if we accept its construction, then the mosquito bite would not be the sole proximate cause of Melton's death.[8]

Gloria, however, interprets "sole cause" differently. She argues that ancillary complications stemming from an accidental bodily injury cannot themselves serve as concurrent proximate causes of an accidental death where those complications arose directly from, and *only because of*, the accident. It follows, she further argues, that acute respiratory failure, septic shock, and multi system failure cannot be considered concurrent proximate causes of Melton's death. In support, she cites the declaration of Dr. Paul Radelat, which states:

> [I]t is misleading to characterize Acute Respiratory Failure, Septic Shock and Multisystem Acute Respiratory Failure as conditions leading to [Melton's] death by [WNE] since these conditions are more accurately characterized as conditions resulting from his [WNE] and secondary thereto. Put another way, but for the [WNE], the latter three conditions would not have developed.

If, after giving the contract terms their plain and ordinary meaning, Gloria's construction is reasonable, under Texas law we must accept her construction. We now turn to our analysis of the policy term "sole cause."

We begin with the observation that accepting Minnesota Life's construction of the causation requirement would seem to create illusory coverage. Indeed, if accidental-death coverage could be precluded by later incidents directly related to and arising solely from the accident, one could reasonably conclude that an insured must die almost immediately after the

---

[8] We make special note that Minnesota Life does not cite to any expert testimony or other record evidence tending to show that acute respiratory failure, septic shock, and multi system failure were *proximate causes* of Melton's death. To be sure, the CDC says that those complications were *direct causes* of death. But the relevant question is whether, "without [each complication,] the [death] would not have occurred." *Tex. Campaign for the Env't*, 485 S.W.3d at 197. But we need not address that absence of record evidence further because we focus instead on the ambiguity of the provision.

accident in order to recover benefits under the policy.  Yet the policy is written to cover deaths that "occur within 90 days after the date of the accidental injury," a time period that appears hollow under Minnesota Life's construction. *See Gregory*, 91 S.W.2d at 1141 ("It is difficult to imagine a death six months after such an injury in which infection or disease had not set up as a result of the injury and finally produced death.").

Furthermore, Minnesota Life's argument is belied by Texas jurisprudence.  In articulating the "sole proximate cause" theory of causation in *Hudman*, the Texas Supreme Court cited a leading Texas insurance authority, which "cogently summarized" the rule as follows:

> As a general rule, it has been stated that if there is a *pre-existing disorder or illness* at the time an injury is received, recovery may still be had if the injury was severe enough to have caused the entire damage or considerable damage, but not if the disease was the proximate cause or principal cause thereof.

398 S.W.2d at 114 (quoting 1A Appleman, Insurance Law and Practice, § 403); *see also Simpson v. Travelers Ins. Co*, 121 F.2d 683, 684 (2d Cir. 1941) ("It has been held in similar circumstances that the event inducing the disease, not the disease itself, was the proximate cause of death.").

Minnesota Life does not point us to any authority in rebuttal to suggest that Texas courts would interpret "sole cause" to mean that complications arising solely from and dependent upon the accidental injury itself are to be considered concurrent proximate causes of an accidental death.  Indeed, the cases it cites address a seizure disorder, heart disease, diabetes, coronary disease, and heart complications, all of which predated the accident at issue in each case.

In sum, we conclude that Gloria's construction of the "sole cause" provision is reasonable.  So accepting her construction, as we must, complications arising directly from, solely because of, and dependent upon the

accidental injury may not be concurrent proximate causes of an accidental death sufficient to strip the accident of its "sole proximate cause" status. In so holding, we do not disparage or exalt either party's position. A factfinder may find that the mosquito bite was the sole proximate cause of Melton's death in the light of Dr. Radelat's declaration that "it is misleading to characterize Acute Respiratory Failure, Septic Shock and Multisystem Acute Respiratory Failure as conditions leading to death by [WNE] since these conditions are more accurately characterized as conditions resulting from his [WNE] and secondary thereto." Or, on the other hand, the factfinder may choose to disbelieve Dr. Radelet in the light of other evidence and find that Melton's complications did not arise directly from and solely because of the WNE. In any event, we hold there is a genuine dispute of material fact as to whether the mosquito bite was the sole cause of Melton's death.[9]

### 3.

### Wound or Contusion

Finally, we consider whether there is evidence of a visible wound or contusion. The policy, in relevant part, reads

> The bodily injury must be evidenced by a visible contusion or wound, except in the case of accidental drowning.

Minnesota Life contends that Melton's claim is not covered under the insuring clause because Melton's accidental injury, the bite, was not "evidenced by a visible contusion or wound," and the district court agreed. To be sure, there is

---

[9] In its briefing, Minnesota Life seems to reference, by name, only Melton's complications—acute respiratory failure, septic shock, and multi system failure—not his preexisting conditions. But even if Minnesota Life did intend to argue that Melton's preexisting conditions were concurrent proximate causes of his death, we would hold that there is a genuine dispute of this material fact in the light of Dr. Radelat's declaration that none of those conditions "w[ere] a contributing factor in [Melton's] demise." *See Hudman*, 398 S.W.2d at 114 ("Recovery is not defeated when a preexisting condition or disorder is so remote in the scale of causation, so dormant and insubstantial, or so temporary and transient that it does not materially contribute to the death or injury.").

no direct evidence in the record that Melton exhibited a wound or contusion from a mosquito bite.

Gloria responds, however, that a jury reasonably could infer that a mosquito bit Melton and that the bite formed a wound or contusion. In the light of the undisputed fact that Melton had WNE and the following record evidence, we agree; Dr. Dennis Lee, Minnesota Life's expert, declared that WNE "is commonly due to a bite from a mosquito infected with [WNV];" Dr. Joseph Kass, Minnesota Life's expert, declared "WNV is a mosquito-borne illness and/or disease most commonly spread by infected mosquitoes" and also wrote in a report that "[WNV is] a virus transmitted by the bite of a mosquito;" and Gloria stated to a Minnesota Life representative that "a mosquito got [Melton]." A reasonable jury could infer that, based on the circumstantial evidence, a mosquito bit Melton, causing a wound or contusion. *Cf. Carnes v. Cont'l Cas. Co.*, 212 So. 2d 441, 443 (La. Ct. App. 1968) ("While no one saw the spider bite [the insured] nor were any of the experts able to testify with absolute certainty that the 'staph' infection entered the body through the spider bite, the circumstantial evidence is so strong as to preclude any other reasonable hypotheses.").

We acknowledge that there are other means, besides a mosquito bite, by which a person may contract WNV. But at the summary-judgment stage, Gloria need only present sufficient evidence to show "a reasonable jury could return a verdict for [her]." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986). There is competent circumstantial evidence from which a jury could reasonably find that a mosquito bit Melton, creating a visible wound or contusion on his body.

4.

In sum, we hold that there is a genuine dispute of material fact as to whether Gloria's claim falls within the insuring clause. It is undisputed that

Melton had WNE and that WNE develops from WNV, which is most commonly contracted from mosquito bites. As for the bite itself, the policy explains that an accidental bodily injury is unintended, unexpected and unforeseen; and there is evidence that Melton did not intend, expect, or foresee that he would be bitten by a WNV-infected Culex mosquito. Moreover, there is evidence that all of the complications that befell Melton in the hospital resulted solely from WNV, and under Gloria's construction of "sole cause," which we accept as reasonable, such complications should not be considered proximate causes of death alongside the WNV. Finally, as a general matter, a factfinder could find a mosquito bite is a wound or contusion, each of which is an undefined term in the policy; and there is circumstantial evidence that a mosquito did bite Melton. Therefore, we hold that this appeal presents the following disputed issues of fact as to coverage: (1) whether a mosquito bit Melton, (2) whether Melton's alleged mosquito bite was an "accidental bodily injury," and (3) whether WNV from an alleged mosquito bite was the sole proximate cause of Melton's death.

B.

Although we hold that there is a genuine dispute of material fact as to whether the insuring clause covers Gloria's claim, there remains the question whether an exclusion under the policy bars coverage. The burden of establishing an exclusion rests on Minnesota Life who argues that Gloria's claim should be denied based on Exclusion Four:

> In no event will we pay the accidental death benefit where your death is caused directly or indirectly by, results from, or there is contribution from . . . bodily or mental infirmity, illness or disease . . . .

No. 16-20831

As noted, the terms "infirmity," "illness," and "disease" are not defined in the policy.

Our prior reasoning finding the "sole cause" provision ambiguous applies equally to Exclusion Four.[10]   Gloria argues that a proper construction of Exclusion Four is the exclusion applies only "to conditions existing when the accident happened" and does not apply to "a condition caused by the accidental injury;" and we find that construction reasonable for purposes of this appeal.[11] Having accepted Gloria's construction, we turn to the facts.

Minnesota Life attempts to carry its burden of establishing an exclusion by arguing that Melton's preexisting conditions *and* post-accident complications exclude coverage.  As explained, there is a genuine dispute, when applying Gloria's construction of the exclusion, whether Melton's post-accident complications fall under Exclusion Four.  With respect to Melton's preexisting conditions, we find that Gloria has presented some evidence from her expert that neither Melton's obesity, diabetes, age, nor hypertension "was a contributing factor in his demise."  Because the exclusion requires that the infirmity, illness, or disease cause or contribute to Melton's death, a dispute of material fact arises as to whether his preexisting conditions exclude coverage. The district court erred in dismissing the breach-of-contract claim on summary judgment.

---

[10] Minnesota Life cites *Sekel v. Aetna Life Insurance Co.* to argue that Exclusion Four is not ambiguous.  But the *Sekel* court held that a similarly worded exclusion was not ambiguous on the question whether a provision excluded diseases that were contributing causes to death or only diseases that were proximate causes to death.  704 F.2d at 1337.  The issue in *Sekel* was not, as it is here, whether the provision excluded coverage based on an infirmity, illness, or disease that resulted only *because of* the accident.  *Id.* at 1338 (explaining the insured's preexisting illness, a heart condition, caused the insured's "accident").

[11] Gloria does not address whether, under her construction, Exclusion Four applies to conditions that onset after accident but are *completely unrelated* to the accident itself. Because we are not presented with such facts, we need not decide the reasonableness of her construction in that situation for purposes of this appeal.

17

No. 16-20831

V.

Finally, we address Gloria's tort claim for bad-faith investigation. She argues that Minnesota Life breached its duty of good faith and fair dealing by not adequately investigating her claim for benefits. Specifically, she contends that Minnesota Life relied solely on the CDC's characterization of Melton's death as "natural" and Dr. Lee's conclusory medical opinion instead of investigating the claim thoroughly. Of course, Minnesota Life denies any bad faith and says, in any event, Gloria cannot have a claim for bad faith without "the complete absence of a reasonable basis for the denial of [her] claim." *Bates v. Jackson Nat'l Life Ins. Co.*, 927 F. Supp. 1015, 1024 (S.D. Tex. 1996). The district court held that Minnesota Life did not demonstrate bad faith because it reasonably denied coverage based on the CDC and Dr. Lee's medical review.

We summarize the principles that guide our review: "An insurance company may . . . breach its duty of good faith and fair dealing by failing to reasonably investigate a claim." *Thompson v. Zurich Am. Ins. Co.*, 664 F.3d 62, 69 (5th Cir. 2011) (citation and internal punctuation omitted). "[A]n insurer cannot insulate itself from bad faith liability by investigating a claim in a manner calculated to construct a pretextual basis for denial." *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998). "Similarly, an insurer cannot escape liability by failing to investigate a claim so that it can contend that liability was never reasonably clear." *Nunn v. State Farm Mut. Auto. Ins. Co.*, 729 F. Supp. 2d 801, 808 (N.D. Tex. 2010) (internal quotation marks omitted). But "Texas courts have clarified that the insurer does not have a duty to leave no stone unturned." *Id.* (internal quotation marks omitted). And Texas courts "agree[ ] that an insurer only breaches its duty of good faith and fair dealing when it lacks a reasonable basis for denying or delaying payment of the claim or when it should have known that no such basis

existed." *Thrash v. State Farm Fire & Cas. Co.*, 992 F.2d 1354, 1358 (5th Cir. 1993).

The record shows that from October 17, 2013, when Gloria submitted her claim with Minnesota Life, to April 9, 2014, Minnesota Life requested the CDC, Melton's medical records, and a "Health Information Request" form. The claims examiner assigned to Gloria's case then "forwarded the records to Minnesota Life's medical department for review asking for a medical opinion on the cause and manner of the Insured's death." Dr. Lee responded, "[T]he fact [that Melton] was diabetic, morbidly obese and 68 may have increased his risk of [WNV] to lead to such severe [WNE]." And thus, after the evidence submitted was reviewed by a claim manager, Minnesota Life determined that it "received no information to support that [Melton's] death resulted directly and independently from any accidental bodily injury sustained."

As our opinion has made clear, this case is close with supporting evidence on both sides of the claim. We are aware that courts have held that "an insurer's reliance upon an expert report, standing alone, will not necessarily shield the carrier if there is evidence that the report was not objectively prepared or the insurer's reliance on the report was unreasonable." *Douglas v. State Farm Lloyds*, 37 F. Supp. 2d 532, 541 (S.D. Tex. 1999). But Dr. Lee's medical opinion was not the only evidence that Minnesota Life had to stand on. In the light of Melton's medical record and the CDC, we hold that Minnesota Life had a reasonable basis for denying Gloria's claim and, consequently, the district court did not err in granting summary judgment as to Gloria's bad-faith claim.

No. 16-20831

VI.

We reverse the district court and hold that genuine disputes of material fact preclude summary judgment on the breach-of-contract claim.  We affirm the district court's dismissal of the tort claim.[12]   We remand for further proceedings not inconsistent with this opinion.  The judgment of the district court, therefore, is

AFFIRMED in part, REVERSED in part,

and the case is REMANDED.

---

[12] Gloria's argument on appeal as to whether the district court erred in denying her motion for new trial or, alternatively, motion to amend the judgment, goes only to the breach-of-contract claim.  Because we remand, her argument is moot.

No. 16-20831

OWEN, Circuit Judge, concurring in part and dissenting in part:

The district court's disposition of Gloria Wells's tort claim was correct, and I therefore concur in affirming the district court's judgment in that regard. However, because Exclusion Four of the accidental-death policy bars coverage, the district court also correctly held that there was no breach of the insurance policy. I therefore respectfully dissent from the reversal of the district court's judgment as to the breach of contract claim.

The policy provides that there is coverage:

> only when . . . death results, directly and independently from all other causes, from an accidental bodily injury which was unintended, unexpected and unforeseen. The bodily injury must be evidenced by a visible contusion or wound . . . . [and] [t]he bodily injury must be the sole cause of . . . death.

Exclusion Four provides that there is no coverage if "death is caused directly or indirectly by, results from, or there is contribution from . . . bodily or mental infirmity, illness or disease." We should interpret this provision by adopting the policy's plain and ordinary meaning. Black's Law Dictionary defines "disease" as "[a] deviation from the healthy and normal functioning of the body" or "[a]ny disorder; any depraved condition."[1] It defines "illness" as "[t]he quality, state, or condition of being sick; bodily or mental indisposition" or "[a] disease of the body or mind; disorder of health."[2] West Nile encephalitis, a life-threatening inflammation of the brain,[3] is plainly a "disease" or "illness"

---

[1] BLACK'S LAW DICTIONARY 567 (10th ed. 2014); *see also Disease*, OXFORD ENGLISH DICTIONARY 763 (2d ed. 1989) ("A condition of the body, or of some part or organ of the body, in which its functions are disturbed or deranged; a morbid physical condition; 'a departure from the state of health, especially when caused by structural change.'").

[2] BLACK'S LAW DICTIONARY 865 (10th ed. 2014); *see also Illness*, OXFORD ENGLISH DICTIONARY 656 (2d ed. 1989) ("Bad or unhealthy condition of the body . . . ; the condition of being ill . . . ; disease, ailment, sickness, malady.").

[3] *See West Nile Virus*, CENTERS FOR DISEASE CONTROL & PREVENTION (Aug. 2, 2017), https://www.cdc.gov/westnile/symptoms/index.html.

as those terms are commonly understood. Major health organizations agree. They too describe West Nile encephalitis as a disease or illness.[4] Because the condition is an "illness" or "disease" under the policy, and because there is no dispute that West Nile encephalitis contributed to Melton Wells's death, Exclusion Four applies.

The majority opinion concludes that Exclusion Four applies only to an illness or diseased that the insured had at the time of the accident and not to an illness or disease that resulted from the accident. But Exclusion Four contains no such limitation. Exclusion Four applies when "death is caused directly or indirectly by, results from, or there is contribution from . . . bodily or mental infirmity, illness or disease." Generally, "[w]ithout some indication to the contrary . . . [words] are to be afforded their full and fair scope . . . [and] are not to be arbitrarily limited."[5] Exclusion Four provides no indication that it is limited to conditions that pre-date the accident. Without that contrary indication, we should afford those terms their full scope.

It is rare that "accidental bodily injury" will result in an "illness" or "disease," as is the case here, assuming that a bite from a mosquito carrying the West Nile virus constitutes "accidental bodily injury." The far more typical cases are where an accidental injury results in trauma to the body that ultimately leads, or contributes, to death. But the policy only covers what it says it covers. Courts should not ignore the plain language of the policy when atypical facts result in a death or injury that is not covered under the policy's express terms, however unfortunate the lack of coverage is for those who were accidentally injured.

---

[4] *See id.* (describing West Nile encephalitis as a "severe illness"); *West Nile virus, Signs and symptoms*, WORLD HEALTH ORGANIZATION (Jul. 2011) http://www.who.int/mediacentre/factsheets/fs354/en/ (explaining that West Nile virus can cause "severe disease," including encephalitis).

[5] ANTONIN SCALIA & BRYAN GARNER, READING LAW 101 (2012).

No. 16-20831

Based on straightforward principles of construction, Minnesota Life has established that Exclusion Four bars coverage for Melton Wells's death.  I respectfully dissent.