# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 11, 2025

Lyle W. Cayce
Clerk

No. 22-20557

AmGUARD Insurance Company,

*Plaintiff—Appellant*,

*versus*

Allen Meisel; Mindy Meisel,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:16-CV-2592

_____

Before Richman, Graves, and Wilson, *Circuit Judges*.

Priscilla Richman, *Circuit Judge*:[*]

AmGUARD, an insurance company, insured a building owned by the Meisels. The building sustained damage from a fire. AmGUARD denied coverage, contending the building lacked a "local fire alarm" that was "in complete working order" as the insurance policy required. In the consequent litigation, the district court granted summary judgment in favor of the Meisels. We affirm.

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-20557

**I**

In May 2016, a fire damaged a building in Houston, Texas, owned by Allen and Mindy Meisel.[1] Between 2004 and 2016, they leased the building to the Sultanali family. The Sultanalis used the building to operate their home-furnishing business, Baths of America, Inc. (BAI).

BAI obtained an insurance policy from AmGUARD that was in effect when the fire occurred. The policy covered "direct physical loss of or damage to" the building up to $1,350,000. The Meisels were named insureds to the extent of physical damage to the building.

This case concerns an endorsement to that policy called the "Protective Safeguards" endorsement. The endorsement modified the policy by adding a condition for coverage and an exclusion from coverage. The condition stated that the insureds were "required to maintain" specified "protective devices," which the endorsement identified as "Central Station Burglar Alarm Local Fire Alarm." The exclusion stated that AmGUARD would not pay for damage caused by fire if, prior to the fire, the insureds "[f]ailed to maintain any [identified] protective safeguard . . . over which [they] had control, in complete working order."

Late on the night of the fire, Ali Sultanali received a phone call from ADT informing him that motion detectors had been triggered at the building. Sultanali checked a video feed from cameras installed in the building and saw smoke. He told the ADT representative to call the Houston Fire Department. The fire department arrived and controlled the fire over the next hour.

---

[1] An investigator retained by AmGUARD determined the fire was caused by a failed ballast in a florescent light.

2

BAI filed a claim under the policy. AmGUARD sent several representatives to inspect the building, including an adjuster. There is no dispute that a "Central Station Burglar Alarm" was in place and operational at the time of the fire. But AmGUARD sent BAI and the Meisels a letter denying coverage because "there was no local fire alarm" in the building. The Meisels responded that the building had a local fire alarm. To be clear, the only dispute in this appeal is whether there was a "Local Fire Alarm" within the meaning of the policy.

AmGUARD filed a declaratory judgment action in federal court against BAI and the Meisels, seeking a determination that it was not liable to them. BAI and the Meisels counterclaimed for, among other things, breach of contract.

About eight months after AmGUARD initiated the federal action, Servpro,[2] a business hired by BAI and the Meisels to clean the building after the fire, sued BAI and the Meisels in Texas state court. The Meisels brought AmGUARD into that case as a third-party defendant, asserting the same claims as in their counterclaims in the federal lawsuit.

AmGUARD removed the Texas lawsuit to federal court. It moved for the two lawsuits to be consolidated and for realignment of the parties, pitting AmGUARD versus BAI, the Meisels, and Servpro. Servpro and the Meisels moved to remand and objected to realignment. The district court ordered the cases to be consolidated, such that the declaratory judgment lawsuit subsumed the removed lawsuit. The court denied the motion to remand.

BAI and the Meisels moved for summary judgment, arguing that the policy covered the damage caused by the 2016 fire. The district court agreed,

---

[2] Servpro is the business name of Norlander Industries, LLC.

holding that the policy covered the insureds' loss. It reasoned that "[t]he building had a local fire alarm, among other alarms, that was in a normal operating state."

AmGUARD then settled with BAI and Servpro, leaving itself and the Meisels as the only remaining parties. A year later, AmGUARD urged the district court to reconsider and revise its coverage ruling. The district court issued a ruling stating that it reconsidered its opinion on coverage, and it confirmed that opinion.

Subsequently, the district court referred the case to a magistrate judge. The magistrate judge awarded a final judgment to the Meisels of $516,061.52 in damages, eighteen percent statutory interest, $173,099.75 in pre-judgment interest, and post-judgment interest. AmGUARD timely appealed.

## II

"This Court must examine the basis of its jurisdiction, on its own motion, if necessary."[3] Accordingly, we directed the parties to brief whether there is complete diversity among the parties.

Under 28 U.S.C. § 1332, "[t]he federal courts may exercise diversity jurisdiction over a civil action between citizens of different States if the amount in controversy exceeds $75,000."[4] "To properly allege diversity jurisdiction under § 1332, the parties need to allege 'complete diversity.' That means 'all persons on one side of the controversy [must] be citizens of

---

[3] *Hutchings v. County of Llano*, 34 F.4th 484, 485 (5th Cir. 2022) (per curiam) (quoting *Mosley v. Cozby*, 813 F.2d 659, 660 (5th Cir. 1987) (per curiam)).

[4] *Advanced Indicator & Mfg., Inc. v. Acadia Ins. Co.*, 50 F.4th 469, 473 (5th Cir. 2022) (per curiam) (quoting *Flagg v. Stryker Corp.*, 819 F.3d 132, 135 (5th Cir. 2016) (en banc)).

different states than all persons on the other side.'"[5] "As the Supreme Court has emphasized, federal diversity-of-citizenship jurisdiction 'depends upon the state of things at the time of the action brought.'"[6] Or, for cases removed from state court, "diversity of citizenship must exist *both* at the time of filing in state court *and* at the time of removal to federal court."[7]

The parties to the declaratory judgment action brought by AmGUARD were completely diverse. The plaintiff, AmGUARD, was incorporated and had its principal place of business in Pennsylvania. The defendants—the Meisels and BAI—were Texas citizens. But the parties to the action brought by Servpro in Texas state court were not diverse. After removal, Servpro represented to the district court that it was a citizen of Texas.[8] Servpro sought remand because the defendants, such as the Meisels, were Texas citizens too.

Both AmGUARD and the Meisels contend that we nevertheless have jurisdiction. We agree. "[W]e must view each consolidated case separately to determine the jurisdictional premise upon which each stands."[9] When the

---

[5] *MidCap Media Fin., L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310, 313 (5th Cir. 2019) (alteration in original) (citation omitted) (quoting *McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004) (per curiam)).

[6] *Ashford v. Aeroframe Servs., L.L.C.*, 907 F.3d 385, 386 (5th Cir. 2018) (quoting *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570-71 (2004)).

[7] *Id.* at 386-87 (quoting *Coury v. Prot*, 85 F.3d 244, 248-49 (5th Cir. 1996)).

[8] Indeed, the full scope of Servpro's citizenship is not clear. "[T]he citizenship of a LLC [like Servpro] is determined by the citizenship of all of its members," *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008), but the parties identify nothing in the record evidencing the citizenship of Servpro's members.

[9] *Kuehne & Nagel (AG & Co) v. Geosource, Inc.*, 874 F.2d 283, 287 (5th Cir. 1989); *see also Shafer v. Army & Air Force Exch. Serv.*, 376 F.3d 386, 394 (5th Cir. 2004) ("This strict segregation of merged cases is necessary to prevent consolidation from 'depriv[ing] a party of any substantial rights that he may have had if the actions had proceeded separately.'" (alteration in original) (quoting *Miller v. U.S. Postal Serv.*, 729 F.2d 1033, 1036

No. 22-20557

declaratory judgment action was filed, the parties were completely diverse—and "diversity jurisdiction is determined at the time of filing."[10] Therefore, we have jurisdiction over the declaratory judgment action. We also have jurisdiction over the removed action. "[D]ismissal of the party that had destroyed diversity" is a "method of curing a jurisdictional defect [that has] long been an exception to the time-of-filing rule."[11] Here, the district court had dismissed the nondiverse parties by the time it confirmed the opinion on coverage at issue here.[12] We are satisfied that we have jurisdiction.

## III

"Courts may grant summary judgment on an issue only when 'no genuine dispute as to any material fact' exists 'and the movant is entitled to judgment as a matter of law.'"[13] "A dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[14] "[W]e must view all evidence and draw all justifiable inferences

_____

(5th Cir. 1984))); *McKenzie v. United States*, 678 F.2d 571, 573-74 (5th Cir. 1982) (per curiam) (affirming the judgment in an action over which we had jurisdiction and dismissing a consolidated action for lack of jurisdiction).

[10] *Grace Ranch, L.L.C. v. BP Am. Prod. Co.*, 989 F.3d 301, 310 n.7 (5th Cir. 2021).

[11] *Grupo Dataflux*, 541 U.S. at 572.

[12] *Id.* at 573 ("The postsettlement dismissal of the diversity-destroying defendant cured the jurisdictional defect . . . . In both cases, the less-than-complete diversity which had subsisted throughout the action had been converted to complete diversity between the remaining parties to the final judgment."); *see also Caterpillar Inc. v. Lewis*, 519 U.S. 61, 64 (1996) ("[A] district court's error in failing to remand a case improperly removed is not fatal to the ensuing adjudication if federal jurisdictional requirements are met at the time judgment is entered.").

[13] *Rogers v. Jarrett*, 63 F.4th 971, 975 (5th Cir. 2023) (quoting *Batiste v. Lewis*, 976 F.3d 493, 500 (5th Cir. 2020)).

[14] *Allen v. U.S. Postal Serv.*, 63 F.4th 292, 300 (5th Cir. 2023) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

No. 22-20557

in favor of [AmGUARD], the nonmovant."[15]    "Still, '[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation' do not count for raising a genuine fact dispute."[16]  "We review summary judgment de novo."[17]

Two provisions of the insurance policy define the parties' dispute. First, the "Protective Safeguards" endorsement (PSE) provides that, "[a]s a condition of this insurance," the Meisels were "required to maintain" listed devices.  The PSE lists these devices: "Central Station Burglar Alarm Local Fire Alarm."  Second, as an "[e]xclusion[]," the PSE states that AmGUARD "will not pay for loss or damages caused by or resulting from fire if, prior to the fire," the insureds "[f]ailed to maintain" any listed device "in complete working order."

The parties agree that Texas law governs this case's contract-law questions.[18]  "Texas law 'places the burden of establishing coverage upon the insured [and] the burden of establishing an exclusion upon the insurer.'"[19]

We begin with the condition to coverage.  The Meisels identify several devices they allege the building had that constituted local fire alarms within

---

[15] *Rogers*, 63 F.4th at 975 (quoting *Coleman v. BP Expl. & Prod., Inc.*, 19 F.4th 720, 726 (5th Cir. 2021)).

[16] *Id.* (alteration in original) (quoting *Coleman*, 19 F.4th at 726).

[17] *Id.*

[18] *See also Evanston Ins. Co. v. Mid-Continent Cas. Co.*, 909 F.3d 143, 146-47 (5th Cir. 2018) ("The parties agree that Texas law governs this diversity action and informs the interpretation of the Mid-Continent insurance policy.").

[19] *Wells v. Minn. Life Ins. Co.*, 885 F.3d 885, 890 (5th Cir. 2018) (alteration in original) (quoting *Century Sur. Co. v. Hardscape Constr. Specialties Inc.*, 578 F.3d 262, 265 (5th Cir. 2009)); *see also* TEX. INS. CODE § 554.002 ("Language of exclusion in the contract or an exception to coverage claimed by the insurer . . . constitutes an avoidance or an affirmative defense" on which "the insurer . . . has the burden of proof.").

the meaning of the policy. They point to two alarm panels that were installed in the building. AmGUARD does not dispute that the building contained those alarm panels. In 2016, BAI hired a company named DirectSat to install an Ademco panel at the rear of the building and a Honeywell panel at the front of the building. The Ademco panel could be programmed to manually activate a fire alarm from the keypad. The Honeywell panel had a "PANIC" icon on its home screen, represented by an exclamation point in a yellow triangle. Pressing the PANIC icon would show an emergency screen, which showed a symbol of a flame labeled "Fire." A representative for DirectSat attested that the panels were programmed such that if either "fire" button were pressed, an alarm would sound from both keypads as well as sirens located in the building.

AmGUARD contends that neither of the alarm panels constituted a "Local Fire Alarm" within the meaning of the policy.[20] Citing a code written by the National Fire Protection Association, AmGUARD argues that the alarm panels "are not permitted for use as a fire alarm in a commercial setting" because they are "neither used exclusively for 'fire alarm initiating purposes' nor 'red in color.'" It stresses that the public would not recognize the panels as fire alarms.

"The interpretation of the [term "Local Fire Alarm"] as used in the insurance contract is a question of law, which the court reviews de novo."[21] "Under Texas law, 'insurance policies are construed according to common

---

[20] The Meisels contend that this argument was forfeited. Because AmGUARD's argument fails, we do not address forfeiture. *See Rollins v. Home Depot USA, Inc.*, 8 F.4th 393, 398 (5th Cir. 2021).

[21] *Evanston Ins. Co.*, 909 F.3d at 146.

principles governing the construction of contracts . . . .'"[22]  The insurance policy does not define the term "Local Fire Alarm."  "Words not defined in a contract are to be understood 'according to their plain and ordinary meaning.'"[23]  "Courts may look to dictionaries to discern the meaning of a commonly used term that the contract does not define."[24]

We conclude that the alarm panels were local fire alarms within the meaning of the PSE.  A fire alarm is "a device that makes a loud sound to warn people when there is a fire."[25]  In a recent unpublished case, we "interpret[ed] the plain language of 'Fire Alarm: Local'" in a similar insurance contract "as requiring an alarm that sounded in the particular place that it alerted."[26]  The alarm panels meet these definitions.  They had dedicated fire-alarm buttons, which would trigger alarms from the panels themselves and from sirens.  Further, the PSE defined several types of protective devices that AmGUARD could require an insured to maintain.  One of them was:

---

[22] *Landmark Am. Ins. Co v. SCD Mem'l Place II, L.L.C.*, 25 F.4th 283, 285-86 (5th Cir. 2022) (quoting *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 562 (5th Cir. 2010)).

[23] *Certain Underwriters at Lloyds, London v. Law*, 570 F.3d 574, 577 (5th Cir. 2009) (quoting *Gray & Co. Realtors, Inc. v. Atl. Hous. Found., Inc.*, 228 S.W.3d 431, 434 (Tex. App.—Dallas 2007, no pet.)); *see also Gonzalez v. Mission Am. Ins. Co.*, 795 S.W.2d 734, 736 (Tex. 1990) (explaining that a contract's undefined terms "should be given their plain, ordinary and generally accepted meanings").

[24] *In re Davenport*, 522 S.W.3d 452, 457 (Tex. 2017).

[25] *Fire alarm*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/fire%20alarm [https://perma.cc/R72L-88MG]; *see also Fire alarm*, OXFORD ENG. DICTIONARY, https://www.oed.com/dictionary/fire-alarm_n?tab=meaning_and_use [https://perma.cc/4XZT-SAWY] (defining fire alarm as a "device or system designed to raise the alarm in the event of a fire, typically by emitting a loud noise").

[26] *Pointe Dall., L.L.C. v. Underwriters at Lloyd's London*, No. 22-11213, 2024 WL 125683, at *3 (5th Cir. Jan. 11, 2024) (per curiam).

No. 22-20557

**Automatic Fire Alarm,** protecting the entire building, that is:

    **(1)** Connected to a central station; or

    **(2)** Reporting to a public or private fire alarm station.

But the PSE did not require the insured to maintain an "Automatic Fire Alarm"—just a "Local Fire Alarm," which the PSE did not define. If AmGUARD desired BAI's fire alarm to be automatic, red in color, or used exclusively for fire-alarm initiating purposes, it could have specified that in the PSE. The alarm panels constituted a local fire alarm within the plain and ordinary meaning of that term.

AmGUARD urges that there is a genuine fact issue about whether the panels had dedicated fire buttons. It points to the Ademco panel's manual, which states that the fire-alarm system applies only to residential systems. But with respect to the Honeywell panel, AmGUARD merely asserts—without identifying any summary judgment evidence—that "the Honeywell panel did not have a dedicated 'fire' button." Indeed, the only summary judgment evidence on this issue is the affidavit of the DirectSat representative, who attested that the Honeywell panel was equipped with such a button. Even assuming that AmGUARD is correct that there is a fact issue about the existence of a dedicated fire button on the Ademco panel, there is no evidence casting doubt about the Honeywell panel's button. Accordingly, the Meisels are entitled to summary judgment on the coverage issue.

The final issue is whether the Meisels are nevertheless excluded from recovering because the alarm panels were not in "complete working order." It is AmGUARD's burden to establish this exception.[27] Ultimately,

---

[27] *See Wells v. Minn. Life Ins. Co.*, 885 F.3d 885, 890 (5th Cir. 2018); Tex. Ins. Code § 554.002.

No. 22-20557

however, AmGUARD failed to point to any evidence that the alarm panels were not in complete working order. Accordingly, AmGUARD has not carried its burden to demonstrate a genuine issue of material fact about whether the alarm-panel fire alarm was less than fully functional.

\*   \*   \*

For the foregoing reasons, the district court's grant of summary judgment to the Meisels is AFFIRMED.