**E.N. FRADY and Marsha Frady, Appellants,**

v.

**Bart MAY d/b/a Bart May Real Estate, Appellee.**

**No. 2–99–118–CV.**

Court of Appeals of Texas, Fort Worth.

June 15, 2000.

Rehearing Overruled July 27, 2000.

Ordered Published July 27, 2000.

implied covenant, (10) failure to account for salvage, (11) conversion, and (12) attorney's fees.

G. Philip Robertson, Clifton, for Appellant.

Malesovas, Martin & Tekell, L.L.P. and David H. Martin, Waco, for Appellee.

PANEL C: CAYCE, C.J.; DAUPHINOT and RICHARDS, JJ.

## OPINION

DAVID L. RICHARDS, Justice.

### Introduction

E.N. Frady and Marsha Frady appeal from the judgment of the trial court following a bench trial. Bart May, d/b/a/ Bart May Real Estate (May), sued the Fradys to recover a broker's commission on the sale of a farm after the Fradys allegedly released the buyer from a contract May had negotiated and closed under a new contract on similar terms. After a bench trial, the trial court found the Fradys liable and entered judgment for May. On appeal, the Fradys argue that there was no written commission agreement that complied with the requirements of the Real Estate Licensing Act because the agreement was contingent on the sale closing under an earnest money contract that had expired under its own terms. The Fradys also challenge the legal and factual sufficiency of the trial court's findings. Because we determine that the commission agreement was not contingent on the sale closing under the earnest money contract negotiated by May, and because the evidence is legally and factually sufficient to support the trial court's judgment, we affirm.

### Background

The background facts are largely undisputed and established by the record. The

Fradys and May were acquaintances and had discussed the sale of the Fradys' Bosque County farm on a number of occasions. On August 31, 1996, the Fradys listed their farm with May, a Granbury realtor. Under the terms of the listing agreement, the Fradys agreed to pay May a six percent commission in the event he was able to procure a ready, willing, and able buyer during the listing term, which was set to terminate on March 1, 1997. The listing was filed with a multiple listings service, and May advertised and showed the property without finding a buyer by the termination date. After the listing expired, May and Ed Frady discussed renewing or extending the listing agreement, and May continued to list and show the property under an oral agreement, but a new listing agreement was never signed.

In May 1997, another realtor, Bert Nichols, d/b/a Nichols Funding, Inc. (Nichols), contacted May about the Fradys' farm. May showed Nichols the farm on several occasions, and shortly afterward, Nichols offered the asking price of $975 per acre. On May 30, 1997, Nichols entered into an earnest money contract with the Fradys and deposited $5,000 in earnest money with a Hood County title company. The closing date was set for August 1, 1997. Under the closing provision, if the contract did not close by August 1, the non-defaulting party was entitled to exercise specific performance, seek other relief as provided by law, or terminate the contract and release the parties from liability upon it.

The contract also contained a commission agreement, which provided that the Fradys would pay May six percent of the final sales price "on closing of this sale, or on termination of this contract except as permitted by its terms, or if the closing is prevented by Seller's default." In a separate provision entitled "Agreement Between Brokers," May agreed to pay Nichols three percent of the final sales price when the final fee was received because Nichols was also a licensed broker.

The financing paragraph of the earnest money contract required Nichols to assume the Fradys' note to Wayne and Bettye Palmer, which was secured by the property and required the Palmers' approval of any assumption. The financing paragraph also provided, "If financing . . . or assumption approval is not obtained within 30 days after the effective date hereof, this contract shall terminate and the Earnest Money shall be refunded to Buyer." The Palmers agreed to allow Nichols to assume the note, but the agreement fell through when Nichols refused to grant the Palmers a permanent easement. Nichols moved his cattle onto the property and continued to seek third party financing, but he was unable to close the sale by the closing date set out under the contract. May did not prepare a written extension of the earnest money contract.

On September 15, 1997, Nichols signed a second earnest money contract with the Fradys for the sale price agreed to under the first contract, but reduced the earnest money requirement to $1,000 and included a new provision requiring the Fradys to provide for title insurance. The contract did not provide for payment of a commission to May. After signing the contract, Nichols and the Fradys signed a mutual release of the escrow deposit under the first earnest money contract without May's knowledge. Nichols subsequently obtained a loan commitment from his bank and closed the sale on October 23, 1997 with another title company in Bosque County. After learning that the earnest money had been withdrawn from the Hood County title company May confronted Nichols about the closing, and Nichols waived his portion of the commission.

May filed suit against the Fradys and Nichols on November 25, 1997 to recover his commission. The Fradys answered with a general denial and alleged that May was barred by the Statute of Frauds, the Texas Real Estate License Act, waiver, and laches.

At trial, May argued that after Nichols failed to assume the Fradys' note to the Palmers, it was understood between the parties that Nichols would continue to seek financing for the original asking price and that Nichols was unable to procure the financing by August 1, 1997 only because the loan arrangements with the bank prevented closing by that date. May contended that Nichols and the Fradys moved the closing to Bosque County to defeat his entitlement to the agreed commission. The Fradys' explanation for moving the closing to Bosque County without informing May was that they believed May was no longer a party to the contract. Frady testified that the closing was set for August 1 because he had a ranch payment due on that date that he wanted to shift to Nichols.

At the conclusion of evidence, the trial judge orally found that the parties had waived the condition that Nichols assume the Palmer note. The trial judge determined that May was entitled to judgment as alleged in his petition, awarded May the amount agreed to as a commission, and entered findings of fact and conclusions of law. In sum, the trial court found that May procured Nichols as a buyer under a written commission agreement with the Fradys, that Nichols was ready, willing, and able to buy the property, that Nichols and the Fradys waived the closing date under the first earnest money contract and continued to negotiate for sale of the property, that Nichols and the Fradys released each other from the first earnest money contract and moved the closing from Hood County to Bosque County for the purpose of defeating May's entitlement to a commission, and that a sales contract between Nichols and the Fradys resulted on nearly identical terms to those negotiated by May.

### Complaints on Appeal

■ The Fradys concede that under their agreement with May, his entitlement to a commission was absolute, with one exception: if the contract terminated as permitted by its terms. The Fradys contend that under the first earnest money contract the closing was contingent upon Nichols obtaining approval to assume their note to the Palmers within 30 days, and May's commission was contingent upon the contract closing under its own terms. They argue that the listing agreement and earnest money contract expired before the final sales contract was signed; therefore, May was barred from suing for a commission as a matter of law because there was no written agreement to pay a commission at the time of consummation that complied with the requirements of the Real Estate Licensing Act (RELA). TEX.REV.CIV. STAT. ANN. art. 6573a, § 20(b) (Vernon Supp. 2000)

■ RELA provides:

An action may not be brought in a court in this state for the recovery of a commission for the sale or purchase of real estate unless the promise or agreement on which the action is brought, or some memorandum thereof, is in writing and signed by the party to be charged or signed by a person lawfully authorized by the party to sign it.

*Id.* RELA bars actions in both contract and tort for recovery of a real estate commission that does not comply with its requirement that the agreement or promise to pay a commission be in writing. *See Trammel Crow Co. No. 60 v. Harkinson,* 944 S.W.2d 631, 636–37 (Tex.1997). The validity of a writing is determined at the time the buyer is procured. *See Ramesh v. Johnson,* 681 S.W.2d 256, 259 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e).

In *Goodwin v. Gunter,* the Texas Supreme Court articulated that a broker earns his commission upon procuring a buyer. *See Goodwin,* 109 Tex. 56, 185 S.W. 295, 296–97 (1916). The court observed:

It is a general doctrine that in order for a broker to be entitled to commissions

under a contract stipulating for their payment in the event of his sale of given property upon stated terms, a purchaser must have been produced through his efforts, ready, able, and willing to buy the property upon the contract terms; otherwise the contract is not fulfilled upon the broker's part and the commissions are therefore not earned. But the commissions are earned and the broker is entitled to their payment according to the contract if, while it is in force, he procures a purchaser to whom the owner directly makes a sale upon terms which are satisfactory to himself, though different from those limited to the broker and yielding the owner a less amount than that for which the broker was empowered to sell. This is but a rule of fairness and right. In such a case the owner receives the full benefit of the broker's effort. Through the diligence of the broker a buyer is produced. Having interested a prospective buyer the broker is entitled to a fair opportunity of making a sale to him upon the terms authorized. That the owner, pending the broker's negotiation, may, in disregard or repudiation of his obligation to respect the broker's right to conclude the transaction, take the matter into his own hands, avail himself of the broker's effort, close a sale upon satisfactory terms, and yet deny the broker's right of compensation, is a proposition not to be countenanced.

*Id.*

■ Following *Goodwin,* Texas courts have rejected the contention that a broker's right to a commission hinges on his actual negotiation or continued employment through the time of the final consummation of the sale. *See Air Cond., Inc. v. Harrison–Wilson–Pearson,* 151 Tex. 635, 253 S.W.2d 422, 425 (1952); *Hutchings v. Slemons,* 141 Tex. 448, 174 S.W.2d 487, 489 (1943); *see, e.g., Poppe v. Camelot Props.,* 711 S.W.2d 101, 106 (Tex.App.—Austin 1986, writ ref'd n.r.e.) (holding broker who produced purchaser under listing agreement was entitled to commission where seller sold property to purchaser two days after agreement expired); *Ramesh,* 681 S.W.2d at 259 (holding broker's right to a commission cannot be defeated by a modification of a contract by the buyer and seller without the broker's consent, even if the modification extends the time for closing and changes the purchase price or terms of payment); *see also Morgan v. Letellier,* 677 S.W.2d 165, 167 (Tex.App.—Houston [1 st Dist.] 1984, writ ref'd n.r.e.) (holding mutual recission by purchaser and owner did not deprive the broker of his commission where parties negotiated a new contract independent of broker). Where the contract is subject to a condition, the broker who negotiated the contract is not entitled to a commission unless the condition is met because he has not performed his agreement to produce a purchaser willing and able to buy on the owner's terms. *See Don Drum Real Estate Co. v. Hudson,* 465 S.W.2d 409, 411 (Tex.Civ.App.—Dallas 1971, no writ).

■ Parties to a brokerage agreement may vary the generally applicable rules by express language. *See Callaway v. Overholt,* 796 S.W.2d 828, 832 (Tex.App.—Austin 1990, writ denied); *Ramesh,* 681 S.W.2d at 259; *Morgan,* 677 S.W.2d at 167; *McCarty v. Brown,* 460 S.W.2d 450, 453 (Tex.Civ.App.—Tyler 1970, writ ref'd n.r.e.). Here, the Fradys' argument that May's commission was contingent upon the earnest money contract closing under its own terms turns on the meaning of the provision "on termination of this contract, except as permitted by its terms." They analogize this case to those where the broker negotiated a conditional sales contract that never became enforceable because of the failure of the condition. *See, e.g., Maberry v. Julian,* 479 S.W.2d 770, 772 (Tex.Civ.App.—Dallas 1972, writ ref'd n.r.e.) (holding failure of condition in sales contract precluded broker's right to commission where commission agreement provided payment for negotiating "this contract").

In this case, May did not seek his commission under the provision of the commission agreement concerning termination of the contract. Rather, May's position is that he was not a party to the earnest money contract and that Nichols and the Fradys were free to modify or extend the contract in any manner they wished, but that doing so would not defeat his right to a commission if the deal ultimately closed as the result of negotiations he initiated. Thus, May was claiming an entitlement to a commission under the terms that provided for payment "on closing of this sale."

At trial, neither party alleged that the commission agreement was ambiguous, and neither party adduced any evidence as to the subjective meaning of the phrases "on close of this sale" or "on termination of this contract except as permitted by its terms." The Fradys simply pleaded that the contract terminated under the financing paragraph, and Mr. Frady testified that he believed the first contract was void because it did not close on August 1. The trial court found that both provisions were substantially the same as the language in *Callaway v. Overholt*, where the court of appeals held that the phrase "upon the consummation of this sale" on its face could not be construed to impose either an actual sale or a sale under the contract as a condition precedent to the broker's recovery. *See Callaway*, 796 S.W.2d at 833–34. The Fradys, apparently content that the termination provision imposed a condition that precluded recovery based on their interpretation, do not address on appeal whether the provision "on closing of this sale" imposed a condition that if the sale closed it was required to close under the first earnest money contract.

 A broker's right to a commission must arise out of some contract, either express or implied in fact or law. *See id.* at 832. It is a basic rule of contract

law that when a court is called upon to interpret a contract, the court will give plain meaning to the words used in the writing. *See City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518–19 (Tex.1968). It is the objective intent of the parties as reflected by the entire instrument that controls the meanings of the given words in a contract. *See id.* If a contract is so worded that a court may properly give it a certain or definite legal meaning or interpretation, it is not ambiguous. *See R & P Enters. v. LaGuarta, Gavrel, & Kirk, Inc.*, 596 S.W.2d 517, 518–19 (Tex.1980). Where a contract provision is unambiguous on its face, its construction is a question of law for the court alone. *See Pinehurst*, 432 S.W.2d at 518; *Callaway*, 796 S.W.2d at 831. Because neither party contends the agreement is ambiguous on its face, we construe the contract as a matter of law. *Cf. Callaway*, 796 S.W.2d at 831.

 There are no particular words that are necessary to impose a condition upon a contract, but they are ordinarily denoted by such expressions as "if," "provided that," "on condition that," and the like. *See Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex. 1976). In this case, however, assuming that the phrase "except as permitted by its terms" did impose a condition precedent to May's recovery "on termination of this contract," as the Fradys suggest, the use of the word "or" indicates that the provisions of the agreement should be read as alternatives to each other rather than as a limitation on each other.

 In contrast to the Fradys' contention that May's commission was contingent on closing the sale under the earnest money contract, only one of the agreement's provisions even contemplates the closing of a sale.[1] Therefore, we also consider

---

1. The commission agreement also provided that May would be paid a commission upon the seller's default. The default paragraph of the contract provides, "If Seller fails to com-

ply herewith for any other reason, Seller shall be in default and Buyer may either (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) termi-

whether the provision for payment "on closing of this sale" limited the Fradys' obligation to pay a commission to closing under the particular contract. We determine that it does not.

■ A contract is recognized as an agreement between two or more persons that creates an obligation to do or not to do a particular thing. *See* BLACK'S LAW DICTIONARY 322 (6 th ed. 1990). The term "sale," however, customarily means "the transfer of the seller's equitable title in consideration of the purchaser's enforceable promise to pay the purchase price." *Callaway*, 796 S.W.2d at 833 (citing *Sanderson v. Wellsford*, 53 Tex.Civ.App. 637, 116 S.W. 382, 384–85 (1909, no writ)). We have observed that a broker effects a sale and is entitled to a commission if the seller may enforce specific performance of a contract. *See Stiles*, 706 S.W.2d at 177.

■ In the context of the commission agreement, we determine that "this contract" simply refers to the first earnest money contract, and "this sale" refers to the actual conveyance of equitable title to the Fradys' farm under any enforceable agreement between Nichols and the Fradys that was procured by May.[2] Thus, the provision "on closing of this sale" simply fixed payment of May's commission upon the transfer of equitable title to the property from the Fradys to Nichols and not on closing the first earnest money contract. Such a construction gives full effect to the general rule expressed in *Goodwin* that a broker's commission is earned upon procuring a ready, willing, and able buyer. If an enforceable contract results between buyer and seller, the latter necessarily accepts the former's readiness, willingness, and ability to perform, in the absence of a special agreement to the contrary. *See Stevens v. Karr*, 119 Tex. 479, 33 S.W.2d 725, 727 (1930); *Callaway*, 796 S.W.2d at 833.

Here, assuming failure of a condition in the earnest money contract, there is no language in the commission agreement or evidence of a special agreement among the parties from which to infer that the Fradys' obligation to pay a commission did not arise unless the sale closed under the first earnest money contract. Nor was there any evidence that May was required to perform anything more than he had done to earn his commission. And there is no language in the commission agreement or evidence that the commission agreement expired with the contract.[3] Thus, we reject the Fradys' contention that May's commission was contingent upon closing of the first earnest money contract and overrule the issue raised on appeal.

The Fradys also challenge the legal and factual sufficiency of the trial court's findings to support the judgment. In determining a "no-evidence" issue, we are to consider all of the evidence in the light most favorable to the party in whose favor the judgment has been rendered, and to

nate this contract and receive the Earnest Money, thereby releasing both parties from this contract." Arguably, under option (b) of the buyer's remedies, it appears that the seller could default *and* the contract "terminate as permitted by its terms" if the buyer elects the option to terminate the contract. To illustrate that each of the three provisions operates independently, and failure to satisfy one of the provisions does not preclude recovery of a commission under one of the others, we observe that it is unlikely under such circumstances the broker would be denied a full commission. *See, e.g., Stiles v. DeAngelo*, 706 S.W.2d 175, 177 (Tex.App.—Fort Worth 1986, no writ) (holding broker entitled to full commission where seller defaulted at closing, buyer—upon seeking specific performance—de-

faulted later, and seller elected forfeiture of earnest money rather than compel specific performance).

2. We do not express any opinion whether the terms "on closing of this sale" would apply to an enforceable contract to sell the farm between the Fradys and *any* buyer procured by May because that issue is not before us.

3. While the commission agreement was included as a paragraph within the earnest money contract, only Nichols and the Fradys were identified as parties to the contract, and only Nichols and the Fradys signed the contract as parties.

indulge every reasonable inference from the evidence in that party's favor. *See Formosa Plastics Corp. v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex.1998) (op. on reh'g); *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997), *cert. denied*, 523 U.S. 1119, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). If there is more than a scintilla of such evidence to support the finding, the claim is sufficient as a matter of law. *See Formosa Plastics Corp.*, 960 S.W.2d at 48; *Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex.1996). There is some evidence when the proof supplies a reasonable basis on which reasonable minds may reach different conclusions about the existence of the vital fact. *See Orozco v. Sander*, 824 S.W.2d 555, 556 (Tex.1992).

▮ An assertion that the evidence is "insufficient" to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered. *See Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). We are required to consider all of the evidence in the case in making this determination. *See Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406 (Tex.), *cert. denied*, 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998).

Much of the Fradys' argument challenging the legal and factual sufficiency of the evidence relies on their assumption that their obligation to pay a commission was contingent on the sale closing under the first earnest money contract. We will limit our review of the trial court's findings to those necessary to support the judgment, consistent with the Fradys' first issue.

Based on the established facts in this case detailed above, we determine the evidence is legally sufficient to support the trial court's findings. In considering all of the evidence, we determine the evidence is factually sufficient to support the trial court's findings. Accordingly, we overrule the Fradys' challenge to the legal and factual sufficiency of the evidence to support the trial court's findings. Because we overrule all of the Fradys' issues presented on appeal, we affirm the judgment of the trial court below.