**Opinion issued December 6, 2018**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-17-00885-CV

————————————

## NLD, INC., Appellant

## V.

## KENNY HUANG A/K/A KENNY HSIEH-HUANG, Appellee

On Appeal from the 333rd District Court
Harris County, Texas
Trial Court Case No. 2017-020259

## MEMORANDUM OPINION

In this appeal, we determine whether a real estate broker is entitled to receive a commission in connection with the sale of a motel. The broker sued the seller of the motel, claiming that it owed him a commission because he had brokered an earlier attempt to sell the property. The trial court rendered summary judgment in

favor of the broker. Because the broker did not have an agreement to represent the seller for the sale that took place, we reverse.

## BACKGROUND

In August 2014, Kenny Huang introduced a representative of the West Airport Inn, Lan Nguyen, to a potential buyer, Mahendra Bhakta. Nguyen and Bhakta signed a commercial real estate contract for the sale of the motel. The sale was expressly contingent on Bhakta's ability to obtain third-party financing. Under the contract, Bhakta agreed to pay $400,000 in cash and to borrow the remaining $1,000,000 of the $1,400,000 purchase price.

As part of the transaction, Nguyen agreed to pay Huang's employer, Champions Real Estate, a commission of three percent of the sales price "at the closing of this sale." Champions has assigned its interest in the commission to Huang.

The sale did not close. Contending that a nuisance lawsuit filed by the City of Stafford clouded title to the West Airport Inn, Bhakta declined to buy the motel. Nguyen returned Bhakta's earnest money. In October 2014, the parties released one another from all liability under their contract. Huang circulated the release and secured the parties' signatures.

The lawsuit brought by the City of Stafford eventually settled. The City nonsuited its claims against the motel in May 2015.

In mid-April 2015, NLD Inc., a company managed and directed by Nguyen, sold the motel. The parties agree that NLD sold and deeded the motel to Ansdil LLC, a company formed in September 2014. Bhakta has a 40-percent ownership interest in Ansdil.

Ansdil paid $200,000 in cash and signed a promissory note payable to NLD in the amount of $1,075,000, with seven percent interest compounded annually, paid in monthly installments of $9,662.40 for a term of 10 years and by a final payment of any outstanding balance at the end of the term. The sales contract did not provide for the payment of a broker's commission.

Huang sued Nguyen and NLD for breach of contract. Nguyen and NLD answered, asserting that Section 1101.806(c) of the Occupations Code—a statute of frauds applicable to real estate commissions—barred any recovery. Huang later nonsuited his claims against Nguyen.

Huang and NLD filed cross-motions for summary judgment. The trial court rendered summary judgment in Huang's favor. In its final judgment, the trial court awarded Huang $38,250—three percent of the purchase price paid by Ansdil under the April 2015 contract—as actual damages.

## DISCUSSION

NLD contends that Huang cannot recover a commission for the sale of the West Airport Inn because he did not have an agreement to represent NLD in the

3

2015 transaction. NLD maintains that it sold the motel on materially different terms to another buyer without Huang's assistance and he had no blanket agreement with NLD to represent it in the sale of the hotel. Huang responds that the terms of the April 2014 contract extend to confer a commission to Huang arising out of the subsequent contract and sale.

## A. Standard of review and applicable law

We review summary judgments de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). When the parties file cross-motions for summary judgment and the material facts are not in dispute, we consider their motions and the summary-judgment record and render the judgment that the trial court should have rendered. *See Perryman v. Spartan Tex. Six Cap. Partners*, 546 S.W.3d 110, 116 (Tex. 2018); *Myrad Props. v. LaSalle Bank Nat'l Ass'n*, 300 S.W.3d 746, 753 (Tex. 2009).

By statute, no one may maintain a suit to recover a commission for the sale or purchase of real estate unless the promise or agreement on which the suit is based is in writing and signed by the party against whom the suit is brought. TEX. OCC. CODE § 1101.806(c); *Trammell Crow Co. No. 60 v. Harkinson*, 944 S.W.2d 631, 635 (Tex. 1997) (interpreting materially alike predecessor statute); *Lawrence v. Reyna Realty Grp.*, 434 S.W.3d 667, 673 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (interpreting current statute). Section 1101.806(c) states:

A person may not maintain an action in this state to recover a commission for the sale or purchase of real estate unless the promise or agreement on which the action is based, or a memorandum, is in writing and signed by the party against whom the action is brought or by a person authorized by that party to sign the document.

TEX. OCC. CODE § 1101.806(c). This statutory requirement is clear and unequivocal; a licensed real estate broker or sales agent cannot recover a commission absent a written commission agreement that complies with the statute. *Trammell Crow*, 944 S.W.2d at 636–37; *Prime Income Asset Mgmt. v. Marcus & Millichap Real Estate Inv. Servs. of Tex.*, No. 01-13-00020-CV, 2014 WL 7473801, at *3 (Tex. App.—Houston [1st Dist.] Dec. 30, 2014, no pet.) (mem. op.).

Section 1101.806(c) is a statute of frauds. *Givens v. Dougherty*, 671 S.W.2d 877, 878 (Tex. 1984) (interpreting materially alike predecessor statute); *Prime Income*, 2014 WL 7473801, at *3 (interpreting current statute); *Lawrence*, 434 S.W.3d at 673 (interpreting current statute). It therefore is an affirmative defense. TEX. R. CIV. P. 94. Our court has held, however, that a broker must prove compliance with the statute even when the defense is not raised. *Prime Income*, 2014 WL 7473801, at *3 (citing *Bayer v. McDade*, 610 S.W.2d 171, 172 (Tex. Civ. App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.)). In this case, NLD pleaded the defense.

When the defense is pleaded, the broker must prove that he or she (1) was licensed when performing the services giving rise to the commission and (2) has a

5

written agreement signed by the person from whom the commission is sought promising payment of a definite commission. TEX. OCC. CODE § 1101.806(b)–(c); *Prime Income*, 2014 WL 7473801, at *3. The agreement must name the broker to whom the commission will be paid and identify the property conveyed, either itself or by reference to another writing. *Prime Income*, 2014 WL 7473801, at *3. A seller may defeat a claim seeking payment of a real estate commission by establishing that the seller did not sign an agreement to pay the commission. *McKellar v. Marsac*, 778 S.W.2d 573, 576 (Tex. App.—Houston [1st Dist.] 1989, no writ) (interpreting materially alike predecessor statute); *Lathem v. Kruse*, 290 S.W.3d 922, 926 (Tex. App.—Dallas 2009, no pet.) (interpreting current statute).

## B.    Analysis

To establish his claim for a commission, Huang relies on the August 2014 real estate contract that was signed by Nguyen and Bhakta and subsequently terminated. In that contract, Nguyen agreed to pay Huang a commission when the motel sale closed. The August 2014 contract is not effective against NLD in this suit for two reasons. First, NLD was not a signatory to the contract. The statute of frauds requires that an agreement to pay a commission may be enforced against the signatory, Nguyen, whom Huang nonsuited. *See* TEX. OCC. CODE § 1101.806(c) (writing must be "signed by the party against whom the action is brought or by a person authorized by that party to sign the document").

6

Nguyen did not sign the agreement on behalf of NLD. The August 2014 contract does not refer to NLD. Nor has Huang alleged a theory that would allow the court to treat Nguyen and NLD as alter egos of each another. Thus, under Section 1101.806(c), Huang cannot recover his commission from NLD. *See Trammell Crow*, 944 S.W.2d at 636–37; *Neary v. Mikob Props.*, 340 S.W.3d 578, 584–85 (Tex. App.—Dallas 2011, no pet.) (writing that did not show on its face that signatory had authority to sign on behalf of sellers did not satisfy Section 1101.806(c)'s requirement that writing be signed by party from whom the commission is sought).

Second, the sale contemplated in 2014 did not close, and Huang's right to payment was conditioned on closing. *See O'Boyle v. DuBose-Killeen Props.*, 430 S.W.2d 273, 276–78 (Tex. Civ. App.—Dallas 1968, writ ref'd n.r.e.) (commission due "upon closing of title" owed only if title closed and was not owed as sale wasn't consummated).

Huang relies on two cases to contend that the earlier contract carried forward to impose an obligation to pay him a commission in the later sale, *Frady v. May*, 23 S.W.3d 558 (Tex. App.—Fort Worth 2000, pet. denied), and *Morgan v. Letellier*, 677 S.W.2d 165 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). Both are distinguishable.

In *Frady*, the earnest money contract between the sellers and buyer required the sellers to pay their broker a commission at closing, or if closing was prevented

7

by the sellers' default, or if the contract was terminated in a manner not permitted under the contract's terms. 23 S.W.3d at 561. The buyer's financing arrangements fell through and the sale did not close by the closing date. *Id.* Rather than abandoning the sale, the sellers and buyer signed a second earnest money contract within a month and a half of the original closing date. *Id.* The second contract provided for the same sales price as the first one, but it omitted the broker's commission. *Id.* The sellers and buyer signed a mutual release as to the earnest money held in escrow under the first contract, changed title companies, and moved the closing to another county without informing the broker. *Id.* at 561–62. The court of appeals rejected the sellers' contention that Section 1101.806(c)'s statutory predecessor barred the broker's recovery. *Id.* at 562–65. Among other things, the court of appeals concluded that there was no language in the commission agreement that made the payment of a commission contingent on the sale closing under the first earnest money contract. *Id.* at 565.

In sum, *Frady* involved circumstances in which:

- the selling and buying parties were identical in both real estate contracts;
- the sellers ultimately sold the property to that very buyer;
- the material terms of the sale, including the price, were alike;
- the two contracts were made in close succession without any lapse in negotiations between the parties; and
- there was affirmative evidence giving rise to a valid inference of deceit by the sellers and buyer.

*See id.* at 561–65. The essence of *Frady* is that the real estate sale negotiated by the broker actually closed and that he therefore remained entitled to his commission.

In *Morgan*, the seller agreed to sell 30 acres of land to a buyer; their contract provided that the seller would pay a commission to the broker. 677 S.W.2d at 166. The parties agreed that if the sale did not close by a specified date, the contract would be null and void. *Id.* The sale did not close by that date. *Id.* But the seller and buyer continued negotiations, and the sale closed just under two months after the lapsed closing date. *Id.* The sales price was much the same—$1,711,510 instead of the original $1,731,510 (a difference of $20,000). *Id.* But the seller and buyer altered the terms on which the broker was to receive her commission: under the new terms, the buyer was responsible for the commission instead of the seller. *Id.* The closing took place without the broker's knowledge. *Id.* The court of appeals observed that it was undisputed that the sale described in the original contract had been consummated by the parties to that contract; it held that the broker's commission became payable upon the sale. *Id.* at 167. The court of appeals further observed that there was no contractual language altering the broker's rights if the sale did not close by the date specified in the contract (as opposed to if the sale failed to close altogether). *Id.* *Morgan*, therefore, is like *Frady*; the essence of the decision is that the sale negotiated with the broker's aid was the sale that closed.

9

The undisputed facts of this case are materially different from those in *Frady* and *Morgan*. The selling and buying parties are not the same in the two transactions. The first contract was between Nguyen and Bhakta; the second was between NLD and Ansdil. In the first contract, the sales price was $1,400,000. Bhakta was to pay $400,000 in cash and obtain third-party financing for the remaining amount. The sales price in the second contract was $1,275,000. Ansdil paid $200,000 in cash. The rest of the price was seller-financed by NLD, with express terms regarding payment and interest. Huang and Bhakta signed the first contract in August 2014. NLD's sale to Ansdil did not occur until six months later.

Huang contends that there is evidence that NLD defrauded him out of his commission. He relies on the fact that Ansdil was formed in September 2014—soon after the first contract was signed in August and not long before the deal was abandoned in October—as evidence that NLD intended to defraud him of his commission. But there is no evidence that NLD or Nguyen had anything to do with Ansdil's formation. Unlike the broker in *Frady*, Huang was aware that the 2014 contract was terminated and he coordinated the parties' signing of a mutual release from any obligations under that contract. Given the different circumstances of this case, *Frady* and *Morgan* are inapposite.

Huang additionally contends that his sole contractual obligation was to furnish Nguyen or NLD with a buyer who was ready, able, and willing to buy the motel.

10

Huang argues that he did so by introducing Nguyen to Bhakta. As in *Morgan*, however, the contract on which Huang relies "is not a listing agreement, in which the usual requirement is that a broker must, within a specified time, furnish a purchaser who is ready, willing, and able to buy the listed property on terms and at a price agreeable to the seller." 677 S.W.2d at 167. Huang could have negotiated such an agreement with NLD as a means of protecting his right to a commission. *See Dean A. Smith Sales v. Metal Sys.*, 397 S.W.3d 305, 306–07 (Tex. App.—Dallas 2013, pet. denied) (listing agreement granting exclusive right to sell particular real estate for a specified commission for period of one year generally enforceable but plaintiff could not recover thereunder because he lacked a real estate license); *Mills v. PMP Mobile Home & Trailer Park*, 630 S.W.2d 749, 749–50 (Tex. App.—Houston [1st Dist.] 1982, no writ) (addressing listing agreement in which seller agreed to pay commission "at the time of closing upon the production by [broker] of a ready, willing and able buyer"). But Huang acted as an intermediary, not as the seller's agent, and no listing agreement is in the record. We therefore reject Huang's contention that his introduction of Bhakta to Nguyen guaranteed his commission even without a written agreement. *See Morgan*, 677 S.W.2d at 167 (as contract was not listing agreement, whether broker furnished a buyer was irrelevant).

NLD established that it did not sign a writing obligating it to pay Huang a commission on the sale of the motel to Ansdil in 2015. Because there is not a written

agreement, Section 1101.806(c) precludes Huang from recovering a commission from NLD. *See* TEX. OCC. CODE § 1101.806(c); *see also Trammell Crow*, 944 S.W.2d at 636 (real estate brokers can't rely on anything less than a signed written commission agreement). Accordingly, we hold that the trial court erred in granting summary judgment in Huang's favor and in denying summary judgment in NLD's favor.

## CONCLUSION

We reverse the judgment of the trial court and render a take-nothing judgment in favor of NLD, Inc.


Jane Bland
Justice

Panel consists of Justices Keyes, Bland, and Lloyd.