**Opinion issued December 31, 2019**



In The

# Court of Appeals

For The

# First District of Texas

—————————————

## NO. 01-17-00885-CV

—————————————

## NLD, INC., Appellant

## V.

## KENNY HUANG A/K/A KENNY HSIEH-I HUANG, Appellee

---

**On Appeal from the 333rd District Court**
**Harris County, Texas**
**Trial Court Case No. 2017-02059**

---

## OPINION ON REHEARING

Appellee, Kenny Huang *a/k/a* Kenny Hsieh-I Huang, moved for rehearing and en banc reconsideration of our December 6, 2018 opinion in this case. In a previous order, we granted Huang's motion for rehearing, vacated our December 6, 2018

opinion and judgment, and dismissed Huang's motion for en banc reconsideration as moot. We now issue the following opinion and judgment on rehearing.

In this appeal, we determine whether a real estate broker is entitled to receive a commission in connection with the sale of a motel. The broker, Kenny Huang, sued the seller of the motel, appellant NLD, Inc., claiming that it owed him a commission because he had introduced the parties to the sale and brokered an earlier attempt to sell the property that ultimately resulted in the sale of the property from the same seller, NLD, to the same buyer, Mahendra Bhakta. The trial court rendered summary judgment in favor of Huang, granting him $38,250 in actual damages and a total of $16,000 in trial and conditional appellate-level attorney's fees.

On appeal, NLD argues that the trial court erred in granting summary judgment in favor of Huang because there was no written contract entitling him to a commission, Huang did not perform or tender performance, and NLD did not breach a contract. NLD also argues that the trial court erred by denying its cross-motion for summary judgment. We affirm.

## BACKGROUND

In August 2014, Kenny Huang, a licensed real estate broker, introduced Lan Nguyen, the president of NLD, who was attempting to sell the West Airport Inn located in Stafford, Texas (the "motel"), to a potential buyer, Bhakta. The parties reached an agreement for the sale of the motel and executed a sales contract on

August 24, 2014. The sales contract, a standard Texas Association of Realtors form, was signed by the Buyer (Bhakta) and by the Seller (NLD, Inc.) through Nguyen. The record contains evidence that NLD, not Nguyen, was the owner of the property.

Section 9 of the standard contract form signed by Nguyen and Bhakta, styled "Brokers," included a realtor's commission in the amount of three percent of the sales price to be paid "at the closing of this sale" to Huang's employer, Champions Real Estate Group. The contract listed Champions as the "Principal Broker" and named Huang as the "Agent." The contract stated that the Principal Broker "is an intermediary between Seller and Buyer." This section also provided as an option that the Seller could pay the Principal Broker the fees specified by a separate written agreement. The parties rejected this option. Instead, as part of the transaction Nguyen agreed to pay Champions a commission of three percent of the sales price "from the Seller's proceeds" "at the closing of this sale." Champions has since assigned its interest in the commission to Huang.

Under "Parties," the contract listed as Seller "Lan Guyen/West Airport Inn (NLAVICO, Inc.)." A handwritten addendum corrected the spelling of Nguyen's last name. Bhakta was listed as the Buyer. The signature page of the contract again listed the Seller as "Lan [Nguyen]/West Airport Inn. . . . By: Lan [Nguyen]." Evidence in the record indicates that, in operating the motel, NLD conducted business as "Little York Suite A.K.A. West Airport Inn & Suites."

3

The sale was made expressly contingent on Bhakta's ability to obtain third-party financing. Specifically, the "Commercial Contract Financing Addendum" to the contract stated:

A. THIRD PARTY FINANCING:

(1) The contract is contingent upon Buyer obtaining a third party loan(s) secured by the Property in the amount of $1,000,000.00 for not less than 20 years with the initial interest rate not to exceed 7.000% per annum and payments calculated on an amortization period of no less than 20 years.

(2) Buyer will apply for the third party loan(s) described in Paragraph A(1) promptly after the effective date [of the sales contract, August 26, 2014]. If Buyer cannot obtain the loan(s), Buyer may give Seller written notice within 30 days after the effective date and the contract will terminate and the earnest money . . . will be refunded to Buyer. **If Buyer does not give such notice within the time required, this contract will no longer be subject to the contingency described in this Paragraph A.**

(3) Each note to be executed under this addendum is to be secured by vendor's and deed of trust liens.

The sales contract set the closing date for the sale "within 7 days after lender approves of loan." Under the contract, Bhakta paid $10,000 in earnest money, and he agreed to pay $400,000 in cash at closing and to borrow the remaining $1,000,000 of the $1,400,000 purchase price.

4

The sale did not close at that time. Contending that a nuisance lawsuit filed by the City of Stafford clouded title to the West Airport Inn, Bhakta declined to go through with the transaction. However, the written notice required within thirty days to terminate the contract was not given. Accordingly, on September 26, 2014, the contract was no longer "contingent," but rather was a fully enforceable and binding contract. This binding agreement included Champions' and Huang's brokers' commission as an integral part of the contract.

In October 2014, Huang emailed Bhakta and Nguyen's daughter, stating that "because of the property law suit, the title cannot be tran[s]ferred" and that "[b]uyer still want[s] the property if the suit is cleared." Huang circulated a "Release of Earnest Money" form to both Nguyen and Bhakta and secured the parties' signatures. The Release stated:

> NOTICE: This form provides for the release of the parties, brokers, and title companies from all liability under the contract (not just for disbursement of earnest money). Do not sign this form if it is not your intention to release all the persons signing this form from all liability under the contract. READ THIS RELEASE CAREFULLY. If you do not understand the effect of this release, consult your attorney BEFORE signing.

> A.  The undersigned Buyer and Seller release each other, any broker, title company, and escrow agent from any and all liability under the aforementioned contract.

> B.  The undersigned direct Caryn Tran/Chicago Title Co. (escrow agent) to disburse the earnest money as follows:

> $10,000— to Mahendra Makan Bhakta

5

In addition to Nguyen and Bhakta, Huang also signed the Release on behalf of Champions.

Notably, Section A of the Release specified that only the "Buyer" and "Seller" released each other (and other persons) from all liability. Specifically, Section A of the Release provided, "The undersigned Buyer and Seller release each other, any broker, title company, and escrow agent from any and all liability under the aforementioned contract." Through Huang's signature on the Release, Champions signaled only its acceptance of the release of Champions' liability by both the Buyer, Bhakta, and the Seller, NLD.

The lawsuit brought by the City of Stafford eventually settled. The City nonsuited its claims against the motel in May 2015.

During this time, negotiations continued between the parties.

In mid-April 2015, NLD restructured the financing for the sale of the motel. NLD sold and deeded the motel to Ansdil LLC, a company formed in early September 2014, shortly after Nguyen and Bhakta had signed the initial sales contract. Bhakta has a forty percent ownership interest in Ansdil, and his brother owns the remaining sixty percent of the company.

Ansdil paid approximately $200,000 in cash and signed a promissory note payable to NLD in the amount of $1,075,000, with seven percent interest compounded annually, paid in monthly installments of $9,662.40 for a term of ten

years and by a final payment of any outstanding balance at the end of the term. The sales contract did not provide for the payment of a broker's commission.

After this sale closed, Huang sued Nguyen and NLD for breach of contract.[1] Nguyen and NLD answered, asserting that Texas Occupations Code section 1101.806(c)—a statute of frauds applicable to real estate commissions—barred any recovery because NLD never signed any document agreeing to pay a commission to Huang. Huang later nonsuited his claims against Nguyen, but he retained his claims against NLD.

Huang and NLD filed multiple cross-motions for summary judgment, including a summary judgment motion filed by Huang on NLD's liability for breach of contract and a separate motion relating to damages. The summary judgment record included (1) a 2004 deed indicating that NLD owned the property where the motel was located; (2) Texas "Franchise Tax Public Information Report" forms from 2011–2014 indicating that NLD's mailing address and principal place of business was the same address as the motel and that Nguyen was the manager and director of NLD; (3) a "Commitment for Title Insurance" issued by Chicago Title Insurance Company on September 5, 2014, that identified NLD as the record owner of the property and that identified the existence of a lawsuit filed February 13, 2014, in the

---

[1] Huang also sued, among other parties, West Airport Inn, which he alleged was "a Texas entity or assumed name." The record shows it was, in fact, an assumed name for NLD.

7

268th District Court of Fort Bend County, captioned *City of Stafford v. NLD, Inc. d/b/a Little York Suite a/k/a West Airport Inn & Suites*; and (4) tax certificates from the Fort Bend County Appraisal District indicating that NLD owned the property. The summary judgment record also included a "Real Estate Purchase Contract" signed on April 10, 2015, by a person named Usha Bhakta and also by Nguyen, on behalf of NLD and NLAVICO, Inc., both of which are identified in the document as "Sellers" of the property.

The trial court rendered summary judgment in Huang's favor. In its final judgment, the trial court awarded Huang $38,250—three percent of the purchase price paid by Ansdil under the April 2015 contract—as actual damages.

## DISCUSSION

NLD contends that Huang cannot recover a commission for the sale of the West Airport Inn because he did not have an agreement to represent NLD in the 2015 transaction with Ansdil. NLD maintains that it sold the motel on materially different terms to another buyer without Huang's assistance and Huang had no blanket agreement with NLD to represent it in the sale of the motel. Huang responds that the terms of the August 2014 contract signed by Nguyen and Bhakta apply and confer a commission to Huang arising out of the subsequent sale.

8

### A. *Standard of Review and Applicable Law*

We review a trial court's summary judgment ruling de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). When the parties file cross-motions for summary judgment, we consider both motions and the summary-judgment record, determine all questions presented, and render the judgment that the trial court should have rendered. *See Perryman v. Spartan Tex. Six Capital Partners, Ltd.*, 546 S.W.3d 110, 116 (Tex. 2018); *Myrad Props. v. LaSalle Bank Nat'l Ass'n*, 300 S.W.3d 746, 753 (Tex. 2009). When cross-motions for summary judgment are filed, each party bears the burden of establishing that it is entitled to judgment as a matter of law. *Tarr v. Timberwood Park Owners Ass'n*, 556 S.W.3d 274, 278 (Tex. 2018).

The Real Estate License Act (RELA) is found in Texas Occupations Code Chapter 1101. Occupations Code section 1101.806(c) states:

> A person may not maintain an action in this state to recover a commission for the sale or purchase of real estate unless the promise or agreement on which the action is based, or a memorandum, is in writing and signed by the party against whom the action is brought or by a person authorized by that party to sign the document.

TEX. OCC. CODE ANN. § 1101.806(c); *see Trammell Crow Co. No. 60 v. Harkinson*, 944 S.W.2d 631, 635 (Tex. 1997) (interpreting materially similar predecessor statute); *Lawrence v. Reyna Realty Grp.*, 434 S.W.3d 667, 673 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (interpreting current statute); *Lathem v. Kruse*, 290 S.W.3d

922, 925 (Tex. App.—Dallas 2009, no pet.) (stating that for commission agreement to comply with section 1101.806(c), agreement must (1) be in writing and must be signed by person to be charged with commission; (2) promise that definite commission will be paid or refer to written commission schedule; (3) state name of broker to whom commission is to be paid; and (4) either itself or by reference to another existing writing, identify with reasonable certainty land to be conveyed). This statutory requirement is clear and unequivocal; a licensed real estate broker or sales agent cannot recover a commission absent a written commission agreement that complies with the statute. *Trammell Crow*, 944 S.W.2d at 636–37. "Texas courts have consistently required strict compliance with the Real Estate License Act if a real estate broker or salesperson seeks a judicial recovery of fees." *Lawrence*, 434 S.W.3d at 672; *Prime Income Asset Mgmt., Inc. v. Marcus & Millichap Real Estate Inv. Servs. of Tex., Inc.*, No. 01-13-00020-CV, 2014 WL 7473801, at *3 (Tex. App.—Houston [1st Dist.] Dec. 30, 2014, no pet.) (mem. op.).

Section 1101.806(c) is a statute of frauds. *Givens v. Dougherty*, 671 S.W.2d 877, 878 (Tex. 1984) (interpreting predecessor statute); *Prime Income*, 2014 WL 7473801, at *3 (interpreting current statute); *Lawrence*, 434 S.W.3d at 673 (same). It therefore is an affirmative defense. TEX. R. CIV. P. 94 (listing examples of affirmative defenses, including statute of frauds). Our Court has held, however, that a broker must prove compliance with the statute even when the defense is not raised.

*Prime Income*, 2014 WL 7473801, at \*3 (citing *Bayer v. McDade*, 610 S.W.2d 171, 172 (Tex. App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.)). In this case, NLD pleaded the defense.

When the defense is pleaded, the broker must prove that he or she (1) was licensed when performing the services giving rise to the commission and (2) has a written agreement signed by the person from whom the commission is sought promising payment of a definite commission. TEX. OCC. CODE ANN. § 1101.806(b)–(c); *Prime Income*, 2014 WL 7473801, at \*3. The agreement must name the broker to whom the commission will be paid and identify the property conveyed, either itself or by reference to another writing. *Prime Income*, 2014 WL 7473801, at \*3. A seller may defeat a claim seeking payment of a real estate commission by establishing that the seller did not sign an agreement to pay the commission. *McKellar v. Marsac*, 778 S.W.2d 573, 576 (Tex. App.—Houston [1st Dist.] 1989, no writ) (interpreting predecessor statute); *Lathem*, 290 S.W.3d at 925 (interpreting current statute).

Under Texas law, a corporation may act only through its agents. *In re Vesta Ins. Grp., Inc.*, 192 S.W.3d 759, 762 (Tex. 2006) (per curiam). Accordingly, the actions of a corporate agent on behalf of a corporation are deemed acts of the corporation. *Holloway v. Skinner*, 898 S.W.2d 793, 795 (Tex. 1995); *see Latch v. Gratty, Inc.*, 107 S.W.3d 543, 545 (Tex. 2003) (per curiam) ("The acts of a corporate

11

agent on behalf of his or her principal are ordinarily deemed to be the corporation's acts."); *Wright Grp. Architects-Planners, P.L.L.C. v. Pierce*, 343 S.W.3d 196, 201 (Tex. App.—Dallas 2011, no pet.) ("When it is apparent from the entire agreement that an officer of a corporation signed the contract on behalf of the corporation as an agent of the corporation, it is the corporation's contract."). An agent need not disclose the identity of her principal in order to act on behalf of that principal. *Latch*, 107 S.W.3d at 546. An undisclosed principal may be bound to a contract if the agent, acting with authority, was intending to act on behalf of the principal. *Id.*

## B.    *Analysis*

The statute of frauds contained in RELA provides that an agreement to pay a commission may be enforced against the signatory. *See* TEX. OCC. CODE ANN. § 1101.806(c) (writing must be "signed by the party against whom the action is brought or by a person authorized by that party to sign the document").

To establish his claim for a commission, Huang relies on the August 24, 2014 real estate form contract that was signed by Nguyen and Bhakta, specifically the commission agreement set out in Section 9. In that contract, Nguyen—acting on behalf of the owner of the motel, NLD, as the president and representative of NLD, and acting under NLD's assumed name of W. Airport Inn,[2]—agreed in writing to

---

[2]    As stated above, evidence in the record—specifically, the commitment for title insurance that identified the nuisance lawsuit against the motel—indicated that NLD conducted the business of running the motel under the name "W. Airport Inn &

12

pay Huang a commission when the motel sale closed. The contract specifically referred, on multiple pages, to "W. Airport Inn," which is NLD's assumed name. Page 1 of the sales contract, paragraph 1, states, "Seller: Lan [Nguyen]/W. Airport Inn." At the end, the contract is signed by Lan Nguyen under the heading "Seller: Lan [Nguyen]/W. Airport Inn."

NLD argues that the contract was between Bhakta and Nguyen, not itself; but that is incorrect under the plain language of the contract and the law. As president of NLD, the seller and record title owner of the property, and signing on behalf of NLD's assumed name, Nguyen was clearly authorized to sign the sales contract as NLD's agent. Indeed, only an agent of a corporation can sign on its behalf, as a corporation cannot act on its own or represent itself. *See Vesta Ins. Grp.*, 192 S.W.3d at 762; *Holloway*, 898 S.W.2d at 795. An undisclosed principal—such as NLD, which was not mentioned in the August 2014 sales contract—may be bound to the contract if an agent—such as Nguyen—was acting with authority and intending to act on behalf of the principal. *See Latch*, 107 S.W.3d at 546. Here, NLD owned the property that was the subject of the sales contract, not Nguyen. Thus, when Nguyen signed the sales contract, she could only do so on behalf of her principal, NLD.

---

Suites." *See Broemer v. Houston Lawyer Referral Serv.*, 407 S.W.3d 477, 482 (Tex. App.—Houston [14th Dist.] 2013, no pet.) ("[W]hen evidence shows an entity is doing business under another name, it may be held liable under that name without regard to whether it filed an assumed name certificate.").

13

NLD also argues that the contract was contingent under its terms. A close reading of the contract negates this argument. The contract could have been terminated within thirty days if notice to terminate the contract had been given, but it was not. Accordingly, on September 26, 2014, one month after the contract became effective, the contract was no longer "contingent"; rather, the contract was a fully enforceable and binding contract under its plain language. This binding agreement included Champions' and Huang's brokers' commission as an integral part of the contract.

NLD argues that the contract was superseded by the Earnest Money Release that applied to the first iteration of the sale terms. That Release, however, provided only generally that "[t]his form provides for the release of the parties, brokers, and title companies from all liability under the contract (not just for disbursement of earnest money)." And it specifically provided only that the "*Buyer* and *Seller* release each other, any broker, title company, and escrow agent from any and all *liability* under the aforementioned contract." (Emphasis added.) Champions, through Huang, generally acknowledged only the release of any liability it and Huang might have as brokers. There was no mention of any release by Champions or Huang of their claim for a realtor's commission in the amount of three percent of the sales price to be paid "at the closing of this sale" to Champions, and that claim was not released. Rather, the commission agreement, which had not yet matured into a claim against the

14

parties, remained in effect. *See Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 889 (Tex. 2019) (stating that, consistent with long-established precedent, contractual phrases should not be isolated or considered apart from other provisions and that "a specific contract provision controls over a general one").

Huang relies on two cases to contend that the August 24, 2014 sales contract imposed an obligation on NLD to pay him a commission from the proceeds of the sale of the motel to Ansdil in April 2015—*Frady v. May*, 23 S.W.3d 558 (Tex. App.—Fort Worth 2000, pet. denied), and *Morgan v. Letellier*, 677 S.W.2d 165 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). We agree with Huang's contention.

In *Frady*, the earnest money contract between the sellers and buyer required the sellers to pay their broker a commission "on closing of this sale, or on termination of this contract except as permitted by its terms, or if the closing is prevented by Seller's default." 23 S.W.3d at 561. The buyer's financing arrangements fell through and the sale did not close by the closing date. *Id.* Rather than abandoning the sale, the sellers and buyer signed a second earnest money contract within a month and a half of the original closing date. *Id.* The second contract provided for the same sales price as the first one, but it reduced the earnest money deposit, required the sellers to provide title insurance, and omitted the broker's commission. *Id.* The sellers and buyer signed a mutual release as to the earnest money held in escrow under the first

contract, changed title companies, and moved the closing to another county without informing the broker. *Id.* The court of appeals rejected the sellers' contention that section 1101.806(c)'s statutory predecessor barred the broker's recovery of his commission under the first sales contract. *Id.* at 562–65.

Among other things, the court of appeals concluded that there was no language in the commission agreement that made the payment of a commission contingent on the sale closing under the first earnest money contract. *Id.* at 565. The same is true here.

In sum, as here, *Frady* involved circumstances in which:

- the selling and buying parties were the same in both real estate contracts;
- the sellers ultimately sold the property to the buyer introduced to the sellers by the broker;
- the two contracts were made in close succession without any lapse in negotiations between the parties; and
- there was affirmative evidence giving rise to a valid inference of deceit by the sellers and buyer to strip the broker of the earned commission.

*See id.* at 561–65. The essence of *Frady* is that because the real estate sale negotiated by the broker actually closed, the broker remained entitled to his commission. That is the essence of this case as well.

In *Morgan*, the seller agreed to sell thirty acres of land to a buyer; their contract provided that the seller would pay a commission to the broker. 677 S.W.2d at 166. The parties agreed that if the sale did not close by a specified date, the

16

contract would be null and void. *Id.* The sale did not close by that date. *Id.* But the seller and buyer continued negotiations, and the sale closed just under two months after the lapsed closing date. *Id.* The sales price was much the same—$1,711,510 instead of the original $1,731,510 (a difference of $20,000). *Id.* But the seller and buyer altered the terms on which the broker was to receive her commission: under the new terms, the buyer, instead of the seller, was responsible for issuing a promissory note for the commission. *Id.* The closing took place without the broker's knowledge. *Id.*

The court of appeals observed that it was undisputed that the sale described in the original contract had been consummated by the parties to that contract, and it held that the broker's commission became payable upon the sale. *Id.* at 167. The court of appeals further observed that there was no contractual language altering the broker's rights if the sale did not close by the date specified in the contract (as opposed to if the sale failed to close altogether). *Id.* The court stated, "[T]he broker's right to a commission cannot be defeated by a modification of a contract by the buyer and seller without the broker's consent, even if the modification extends the time for closing and changes the purchase price or the terms of payment." *Id. Morgan*, therefore, is like *Frady*; the essence of the decision is that the sale negotiated with the broker's aid was the sale that closed.

17

Here, as in *Frady* and *Morgan*, the selling and buying parties are the same in the original and in the completed transaction. The original contract was between NLD and Bhakta, as was the contract at closing, which Bhakta signed on behalf of his new entity, Ansdil. There is no evidence that negotiations ever ceased or that any potential buyer other than Bhakta was approached or sought by NLD. Rather, the delay was admittedly caused by the interference with the transfer of title due to the nuisance lawsuit, and when that impediment disappeared the deal closed. In the first formulation of the contract for sale, the sales price was $1,400,000. The sales price in the second contract was $1,275,000. The type of financing was changed, but that was a subject of the negotiations between the parties.

We hold that Huang established that NLD, as seller, and Bhakta, as buyer, signed a written standard form contract governing the sale of the West Airport Inn and obligating NLD to pay Huang a commission on the sale of the motel. That agreement was still in effect under its own plain language when negotiations concluded and the sale closed in April 2015. Because there is a written commission agreement that complies with the statute of frauds, Texas Occupations Code section 1101.806(c), Huang, as the assignee of the principal broker, his employer Champions, was entitled to recover a three percent commission from NLD on the proceeds at the closing of the sale. *See* TEX. OCC. CODE ANN. § 1101.806(c); *see*

18

*also Trammell Crow*, 944 S.W.2d at 636 (stating that real estate brokers can rely only on signed written commission agreements).

Accordingly, we hold that the trial court did not err in granting Huang's motions for summary judgment and in denying NLD's motion for summary judgment.

## CONCLUSION

We affirm the judgment of the trial court. All pending motions are dismissed as moot.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Lloyd, and Goodman.

19